512 N.W.2d 894 (1994)
In re the Petition to Adopt S.T. and N.T.
No. C0-92-1672.
Supreme Court of Minnesota.
March 11, 1994.
*896 Michael O. Freeman, Hennepin County Atty., Nancy K. Jones, Asst. County Attorney, Minneapolis, for appellant.
Wright S. Walling, Gary A. Debele, Minneapolis, for Robert T. Iskierka.
Hubert H. Humphrey, III, Atty. Gen., LauraSue Schlatter, Asst. Atty. Gen., St. Paul, for Commissioner of Public Services.
Shirley A. Reider, Minneapolis, for guardian ad litem.
Heard, considered, and decided by the court en banc.
PAGE, Justice.
This case involves Robert and Laurie Iskierka's attempt to adopt S.T. and N.T., two African-American children for whom they provide foster care. On May 22, 1989, S.T., born December 27, 1987, and N.T., born November 10, 1988, were placed in the Iskierka's home for emergency shelter care. The Iskierkas became the children's foster parents on July 13, 1989. At the time, the Iskierkas were licensed foster care providers and residents of Hennepin County. The Iskierkas, who are Caucasian, currently live in Carver County and have four children, two of whom were adopted after being placed in their home as foster children. S.T. and N.T. continue to reside in the Iskierkas' home. During the last ten years, the Iskierkas have provided foster care for approximately forty-five children.
S.T. and N.T. are state wards and are under the guardianship and legal custody of the Minnesota Commissioner of Human Services. Hennepin County Social Services is the local agent for the Commissioner, responsible for S.T. and N.T.'s social service plan, including pre-adoption placement.[1] S.T.'s and N.T.'s mother's parental rights were terminated in Hennepin County Juvenile Court on August 29, 1990. The district court denied the mother's motion to vacate the termination on September 25, 1990. On April 23, 1991, the court of appeals affirmed the trial court's order and this court declined review on June 19, 1991.
The Commissioner waited until after this court declined review to begin planning for permanent placement of the children and to recruit relatives of the children for possible adoptive placement. According to the Commissioner, several relatives of S.T. and N.T. expressed an interest in adopting the children. Some of these relatives resided outside of Minnesota and, as a result, the Commissioner requested home studies through the Interstate Compact for the Placement of Children. The Commissioner eventually identified one relative, an aunt of the mother, as prospectively the most suitable adoptive parent. The aunt lives in Chicago and is the only relative under serious consideration at this time.
The Commissioner began visitation between the aunt and the children in February 1992. The Commissioner planned to transition the children to the aunt's care for preadoptive placement in July of 1992. By letter dated January 30, 1992, the Iskierkas informed the Commissioner that they desired to adopt the children. The Iskierkas informed the Commissioner in May of 1992 that they intended to file a petition for adoption. The Commissioner refused to consent to the adoption.
On May 11, 1992, the Iskierkas filed motions in Carver County District Court for waiver of agency placement, leave to file a petition for adoption, waiver of home study, and award of temporary physical care, custody, and control of the children. On June 18, 1992, the Commissioner filed responsive motions to transfer venue to Hennepin County, deny waiver of agency placement, dismiss the petition for adoption for lack of consent under *897 Minn.Stat. § 259.24, subd. 1 (1992), and deny the award of temporary custody.
After a hearing on July 16, 1992, the trial court, by order filed July 28, 1992, granted the Iskierkas' motions for temporary care and control, waiver of agency placement, and for permission to file the adoption petition. In addition, the trial court ordered a home study regarding the petition, and maintained venue in Carver County. As a result of this order, the pre-adoption placement with the children's aunt did not take place and no further action was taken to place the children with the aunt. The Commissioner appealed, and, on March 16, 1993, the court of appeals affirmed the trial court in all respects, 497 N.W.2d 625.
The Commissioner filed a petition for further review, specifically requesting that this court either dismiss the Iskierkas' petition for lack of jurisdiction, or, in the alternative, remand for a determination of the reasonableness of her refusal to consent, under Minn.Stat. § 259.24 (1992). The trial court's denial of the Commissioner's motion to dismiss for lack of jurisdiction is appealable of right. Cf. Hunt v. Nevada State Bank, 285 Minn. 77, 88-89, 172 N.W.2d 292, 299-300 (1969), cert. denied 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). Because this case involves statutory interpretation, our review is de novo. Hibbing Educ. Ass'n v. Pub. Employment Relations Bd., 369 N.W.2d 527, 529 (Minn.1985).
The Commissioner contends that Minn. Stat. § 259.24, subd. 1(e), which, when applicable, grants the Commissioner the exclusive right to consent to an adoption, deprives the district court of jurisdiction where the Commissioner has withheld consent. In the alternative, the Commissioner argues that if the court does have jurisdiction, the court's review should be summary in nature and limited to a preliminary determination of the reasonableness of denying consent.
The Commissioner bases its argument on its reading of section 259.24, subds. 1(e), 5 and 7, in conjunction with Minn.Stat. § 259.255. Minn.Stat. § 259.24, subd. 5, addresses the timing for filing consents. Minn.Stat. § 259.24, subd. 7, prohibits the Commissioner from unreasonably denying consent. Minn.Stat. § 259.255 provides a preference for adoptive placement with relatives. Applying its narrow interpretation of these statutes, the Commissioner reasons the preference for adoptive placement with relatives should have required the district court to find the denial of consent reasonable as a matter of law. Thus, under the Commissioner's theory, if placement with a relative is possible, the denial of consent to file an adoption petition by a non-relative is reasonable by fiat.
We disagree with the Commissioner's interpretation of each of these adoption statutes. Minn.Stat. § 259.24, subd. 1(e) (1992) reads:
The commissioner or agency having authority to place a child for adoption pursuant to section 295.25, subdivision 1, shall have the exclusive right to consent to the adoption of such child.
In In re Adoption of Zavasky, 241 Minn. 447, 453, 63 N.W.2d 573, 578 (Minn.1954),[2] this court held that by the "explicit wording" of subdivision 1, the legislature intended to deprive the court of jurisdiction over the adoption proceeding absent the Commissioner's consent to a petition for adoption. However, in 1974, the legislature enacted Minn.Stat. § 259.24, subd. 7, which reads "[c]onsent to an adoption shall not be unreasonably withheld by a guardian, who is not a parent of the child, by the commissioner or by an agency." For this subdivision to be given effect, the trial court must have jurisdiction over the adoption proceeding to determine whether or not the Commissioner's decision to deny consent was unreasonable. Therefore, we hold that subdivision 7 grants the trial court jurisdiction over the adoption proceeding absent the Commissioner's consent to an adoption petition.
Further, Minn.Stat. § 259.24, subd. 5, requires "[c]onsents [to] be filed in the adoption proceedings at any time before the matter is heard * * *." Subdivision 5 suggests that the adoption proceedings encompass something more than the "matter" being *898 "heard." The decision on the reasonableness of denying consent to the adoption petition will, in most circumstances, involve consideration of matters relevant to the adoption petition. Each situation will be different and the more information available to the court at the time the reasonableness of the grant or denial of consent is determined, the better. The most appropriate place for considering these matters is within the adoption proceeding. The determination of whether the Commissioner's grant or denial of consent is reasonable is a prerequisite to the ultimate decision on whether to grant the adoption petition. It is not a prerequisite to the filing of an adoption petition.
In Minn.Stat. § 259.255 (Supp.1993), the legislature has clearly declared a preference for adoptive placement with relatives:
The authorized child placing agency shall give preference, in the absence of good cause to the contrary, to placing the child with (a) a relative or relatives of the child, or if that would be detrimental to the child or a relative is not available, (b) a family with the same racial or ethnic heritage as the child, or if that is not feasible, (c) a family of different racial or ethnic heritage which is knowledgeable and appreciative of the child's racial or ethnic heritage.
Furthermore, this court has held that there is a strong preference for placement with relatives. In re D.L., 486 N.W.2d 375, 380 (Minn.1992), cert. denied ___ U.S. ___, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992). Thus, both statutory and common law require that adoptive placement with a relative must be given a preference.
A preference is only a preference. It is not a commandment to be followed blindly or mechanically irrespective of the particular needs of individual children. As we said in D.L.:
[The statutory preferences do] not mean that relatives' adoption petitions must be granted automatically. The terms "best interests," "good cause to the contrary" and "detriment" do not lend themselves to standardized definitions. The best interests of potential adoptees vary from case to case, and the trial court retains broad discretion because of its opportunity to observe the parties and hear the witnesses.
Id.
Our interpretation of these adoption statutes is guided by the fundamental purpose of the entire procedural scheme. That purpose is to determine the best interests of the child. The role of this court and the judicial branch as a whole in this regard is "to guard the welfare of children who are wards of the state after parental termination." Id. at 379. The "cardinal principle" in adoption matters "is to regard the benefit of the infant as paramount." Id. (quoting State ex rel. Flint v. Flint, 63 Minn. 187, 189, 65 N.W. 272, 273 (1895)). These principles mandate that courts must give careful consideration to decisions which affect the welfare of children. No decision is likely to have more bearing on the welfare of children who are wards of the state than the decision as to where they are permanently placed. Because the decision to grant or deny consent to an adoption cannot be made without considering the particular situation of the child, the trial court must be free to examine all relevant evidence to determine whether the Commissioner's action was in the best interests of the child.
At this point in the instant proceedings, the record is insufficient to reach a conclusion as to whether the Commissioner's decision to deny consent was either reasonable or unreasonable as a matter of law. That an aunt of the children might be a suitable adoptive parent does not automatically mean that the Iskierkas should be precluded from pursuing the adoption of S.T. and N.T. Indeed, the suitability of the aunt is unknown. The aunt has not petitioned to adopt the children, nor has the Commissioner completed its investigation of her. While the Iskierkas have a significant burden to overcome given the statutory and common law preference for adoptive placement with relatives, it is a burden they must have the opportunity to overcome because at this stage of the proceedings we cannot exclude the possibility that placement with the Iskierkas may be in the children's best interests. To eliminate the Iskierkas from consideration at this time would only serve to delay *899 the final resolution of this matter in the event placement with the aunt is not in the children's best interests.
Having concluded that the Iskierkas are entitled to participate in the proceedings, we must determine whether the trial court abused its discretion by maintaining custody of the children with the Iskierkas. As noted above in D.L., we concluded "that a strong family preference exists for all child placements * * *." We also noted above that Minn.Stat. § 259.255 states a preference for placing children with relatives. In the absence of good cause to the contrary, the preference for adoptive placement with a relative must be given effect. Where the Commissioner has identified a relative as a possible adoptive parent, the trial court must allow the Commissioner to make a final determination as to whether placement with that relative is appropriate. By maintaining custody with the Iskierkas and not permitting the Commissioner to complete its investigation of the aunt and make a final determination as to whether placement with her is appropriate, the trial court has rendered the preference for placement with a relative meaningless. The Commissioner must be allowed to complete her investigation of the aunt, including preadoption placement. The Commissioner should not, however, be given unlimited time to make the determination. The trial court must set a fixed reasonable time period in which the Commissioner will be allowed to make a determination with respect to the aunt. During this same time, if any further investigation of the Iskierkas' suitability as adoptive parents is necessary, it should be conducted. The course to be followed at the conclusion of that time period will depend on the results of the Commissioner's investigation. At that point the trial court can proceed based on the petition or petitions before it as permitted by D.L. However the trial court proceeds, it will be in a better position to make a decision as to the adoptive placement which is in the best interests of S.T. and N.T.
Sadly, this case reminds us that our system does not always serve the best interests of children. Nothing is further from the best interests of children than a system that fails to resolve child placement disputes within a reasonable period of time. Here, the system has failed. S.T. and N.T. have spent years without the stability of a permanent home. There is no reason why the Commissioner should not have begun the search for suitable adoptive placement when the trial court terminated the children's mother's parental rights in 1990, rather than waiting for the appeals process to conclude. While placement could not be made prior to the termination of parental rights becoming final, the Commissioner should have been in a position to make the appropriate placement as soon as the termination became final. At this late date, in the winter of 1993-94, we should not be discussing prospective adoptive parents for S.T. and N.T. This litigation highlights the tragedy which occurs when children are the center of extended legal battles. When this unfortunate saga began, S.T. and N.T. were seventeen-months- and six-months-old respectively. They are now seven and five years old. From this point forward all involved in this matter must move expeditiously to finalize the placement of S.T. and N.T.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] The Commissioner of Human Services and Hennepin County Social Services are hereinafter referred to collectively as "the Commissioner."
[2] In N.W.2d, this case is titled Petition of Sherman.