515 N.W.2d 618 (1994)
In re the Matter of the Petitions to Adopt K.L.L.
No. C8-93-2272.
Court of Appeals of Minnesota.
May 3, 1994.
*619 Steven C. Youngquist, Rochester, for appellant guardian ad litem.
Gerald M.B. Chester, Minneapolis, for respondents L.S. and T.S.
Mary Alice C. Richardson, Sharon L. Buffington, Rochester, for respondent K.D.
Raymond F. Schmitz, Olmsted County Atty., Susan J. Mundahl, Asst. County Atty., Rochester, for respondent Department of Human Services.
Considered and decided by HARTEN, P.J., and PETERSON and STONE,[*] JJ.

OPINION
HARTEN, Judge.
This case concerns the adoption of K.L.L., a three-year-old child. Appellant Jan Vetter, the guardian ad litem for K.L.L., seeks review of a judgment granting the adoption petition of K.L.L.'s foster mother, K.D., and denying the petition of respondents L.S. and T.S. The Commissioner of Human Services (Commissioner), through her agent Olmsted County Department of Social Services (the county), denied consent to K.D.'s petition and supported the L.S. and T.S. petition. Appellant contends that the record does not support the trial court's determination that adoption by K.D. is in K.L.L.'s best interests. We disagree and affirm.

FACTS
K.L.L. was born in Rochester, Minnesota, on July 8, 1990. The parental rights of K.L.L.'s biological mother were terminated on March 20, 1992. K.L.L.'s biological father is deceased. K.L.L. has two older half brothers, J.S. and T. The children have the same mother but different fathers.
J.S., born June 18, 1989, was placed in foster care prior to K.L.L.'s birth; he and K.L.L. have never lived together. The parental rights of J.S.'s biological parents were terminated, and J.S. was placed with L.S. and T.S. in April 1991. The L.S. and T.S. adoption of J.S. was finalized in May 1992. L.S. and T.S. live in St. Cloud. They have been married since 1982. L.S. is employed *620 by Stearns County Social Services and T.S. is a teacher.
In December 1990, both K.L.L. and her older half brother, T., were removed from their biological mother's home and placed in foster care with K.D. In September 1991, T. left K.D.'s foster home and the record indicates that he is now living with a maternal aunt and her companion. The county did not place T. with his present caretakers. K.L.L. has continued to live with K.D. since the original foster care placement.
K.D. is a 35-year-old licensed practical nurse. She is unmarried and has no children. In addition to taking foster care placements, K.D. operates a licensed day care center in her home.
In 1992, K.D., and L.S. and T.S., filed competing petitions to adopt K.L.L. The trial court waived the requirement of agency placement for K.D.'s petition and directed a consolidated trial on both petitions.
Psychologist Dr. William Friedrich, a professor in the Department of Psychiatry and Psychology at the Mayo Clinic and the Mayo Medical School, testified that he had examined K.L.L. at the age of four months, when K.L.L. was still living with her biological mother. Dr. Friedrich stated that at that time K.L.L. was developing at the average range, but there were clear signs of neglect. Dr. Friedrich indicated that when he tested K.L.L. again in May of 1992, K.L.L.'s mental development index was in the very superior range. Dr. Friedrich attributed this improvement to K.D.'s parenting.
Based on a psychological evaluation of K.D. and his observations of the relationship between K.D. and K.L.L., Dr. Friedrich recommended that K.D. be allowed to adopt K.L.L. Dr. Friedrich testified that K.L.L.'s secure attachment to K.D. should be maintained, especially because K.L.L. already had experienced the loss of her biological mother. Dr. Friedrich opined that maintaining the parent-child relationship between K.D. and K.L.L. is more important to K.L.L.'s well-being than establishing a sibling tie.
K.D. retained Ann Louise Jones, a psychologist employed by the Wellspring Adoption Agency, to conduct a home study. Jones testified that she highly recommended that K.D. be allowed to adopt K.L.L., based on her observations of the strong bond between the two and the nurturing environment that K.D. provided.
K.D., three of her sisters, and a long-time friend testified that K.L.L. is strongly attached to K.D. and has a close relationship with K.D.'s extended family. In addition, parents of three of K.D.'s day care children testified that they have observed a parent-child relationship between K.D. and K.L.L. K.D. testified that K.L.L. is basically healthy, but has experienced breathing problems and seizures and tends to have high cholesterol.
Cheryl Mendel, a county social worker, presented the reasons for the Commissioner's denial of consent to K.D.'s petition. Mendel testified that the presence of K.L.L.'s brother, J.S., in the L.S. and T.S. family home was the primary reason for the Commissioner's support of the L.S. and T.S. petition. Mendel stated that general state policy is that siblings should not be separated unless there is very good cause, and that about one-half of the post-adoption requests for information in Minnesota have been from one sibling seeking out another sibling.
Mendel testified that a secondary reason for rejection of the K.D. petition was the proximity of K.L.L.'s birth family in Rochester, where K.D. lives. Mendel stated that social services has been involved with the birth family since 1940, and that the family has a history of abuse and enmeshed family relationships. Mendel indicated her concern that members of the birth family would attempt to become involved with K.L.L., as had been the case with another locally adopted family member. Mendel also testified that it would be advantageous for K.L.L. to be placed in a two-parent family.
Both L.S. and T.S. testified regarding their love for J.S., the stability of their home, and their desire to adopt K.L.L. so that she and J.S. could grow up together as siblings. Sherburne County social worker Carol Jean Askew conducted a home study, resulting in a recommendation that L.S. and T.S. be allowed to adopt K.L.L. Two family friends also testified in support of the their petition.
*621 Psychologist Dr. Marian D. Hall reviewed both adoption home studies but did not meet with the parties or K.L.L. Dr. Hall testified she did not believe that separation from K.D. would result in long-term damage to K.L.L., provided that L.S. and T.S. are the type of parents as described in their home study. Dr. Hall discussed the benefits to K.L.L. that would result from placement with her brother in a two-parent family. Dr. Hall indicated that her comments were based on a generic perspective and that she did not have enough information to make a specific recommendation regarding K.L.L.'s placement.
Olmsted County child protection worker Mary Faye and appellant both testified regarding their concerns about K.D.'s parenting abilities. Faye testified that K.D. was sometimes rigid and insensitive in her approach to the foster care children. But Faye indicated that K.D.'s foster care license had been renewed since Faye submitted an October 1992 report reflecting those concerns.
Appellant stated that she was appointed guardian ad litem for K.L.L. in July 1991. Appellant indicated that K.D. could have done more to facilitate visits between K.L.L. and J.S., and that K.D. had shown some rigidity with regard to some of the rules that she had established for her home. Appellant recommended that the L.S. and T.S. petition be granted because of their parenting strengths and because that would enable K.L.L. and J.S. to grow up together.
The trial court concluded that the Commissioner unreasonably refused consent to K.D.'s petition based on an undue reliance on K.L.L.'s biological relationship to a sibling adopted by a family located outside the Rochester area. The trial court found that K.L.L.'s best interests would be served by granting K.D.'s petition, because, while both K.D. and the L.S. and T.S. family are able to provide K.L.L. with loving and adequate care, K.L.L.'s integration and bonding to K.D.'s family is well established and substantial. This appeal followed.

ISSUES
1. Does the preference for adoptive placement with a relative apply to a petition filed by nonrelatives whose family includes the child's sibling?
2. Did the trial court abuse its broad discretion in concluding that the child's best interests were served by granting the foster parent's adoption petition?

ANALYSIS
The trial court's authority to grant an adoption petition is governed by Minn.Stat. § 259.28 (1992). The statute provides that adoption shall be granted if the court finds that it is in "the best interests of the child." Minn.Stat. § 259.28, subd. 1(a).
1. In determining adoptive placement, "the court shall give preference, in the absence of good cause to the contrary, to (a) a relative or relatives of the child." Minn.Stat. § 259.28, subd. 2. Appellant argues that the trial court erred in rejecting the statutory preference for family placement because of K.L.L.'s attachment to K.D. In re Welfare of D.L., 486 N.W.2d 375, 381 (Minn.1992) (initial pain to child of separation from foster parents is "not good cause to defeat the family preference"), cert. denied, ___ U.S. ____, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992). But we agree with the trial court that the family preference does not apply to either petition.
Interpretation of a statute is a question of law which this court reviews de novo. See Hibbing Educ. Ass'n v. Public Employment Relations Bd., 369 N.W.2d 527, 529 (Minn.1985). The purpose of all statutory construction is to "ascertain and effectuate" legislative intent. Minn.Stat. § 645.16 (1992).
The supreme court has said that the legislative family preference expressed in section 259.28, subdivision 2 and other statutory provisions reflects the common sense notion that blood relatives are more likely to advance the child's interests than those who "`lack the prompting of kinship.'" D.L., 486 N.W.2d at 380 (quoting State ex rel. Waldron v. Bienek, 155 Minn. 313, 315, 193 N.W. 452, 452 (1923)).
Based on the foregoing policy reason for the family preference, we interpret section 259.28, subdivision 2 to mean a custodial preference to relatives. The presence of the *622 child's minor sibling in a nonrelative's household, while an important "best interest" factor, does not invoke the statutory presumption in favor of family placement.
The preference for custodial placement with family members does not apply to the L.S. and T.S. petition because L.S. and T.S. are not K.L.L.'s relatives. We also reject K.D.'s argument that she is a "relative" based on the broad definition of that term applicable only to foster care placements. See Minn.Stat. § 260.181, subd. 3 (1992). The trial court correctly determined that the statutory preference for adoptive placement with a relative does not apply.
2. When parental rights have been terminated,
the Commissioner or agency having authority to place a child for adoption * * * shall have the exclusive right to consent to the adoption of such child.
Minn.Stat. § 259.24, subd. 1(e) (1992). But consent to an adoption shall not be "unreasonably withheld" by the Commissioner. Minn.Stat. § 259.24, subd. 7 (1992). Under section 259.24, subdivision 7, the trial court has jurisdiction to determine the reasonableness of the Commissioner's decision to grant or deny consent. In re S.T., 512 N.W.2d 894 (Minn.1994).
Appellant argues that the trial court erred by applying a "best interests" standard in determining whether the Commissioner's denial of consent was reasonable. The supreme court recently held, however, that in reviewing the Commissioner's decision to grant or deny consent to an adoption, the trial court must consider the best interests of the child, and "must be free to examine all relevant evidence." Id. at 898.
Appellant contends that even if the "best interests" standard applies, the trial court abused its discretion by concluding that the Commissioner unreasonably denied consent to K.D.'s petition. Appellant argues that the record does not support a finding that granting K.D.'s petition is in K.L.L.'s best interests, because the long-term advantages of placement with L.S. and T.S. outweigh the temporary pain that would result from the disruption of K.L.L.'s relationship with K.D. We disagree.
The best interests of potential adoptees will vary from case to case, and the trial court retains broad discretion because of its opportunity to observe the parties and hear the witnesses. In exercising that discretion, [the] trial court must make detailed factual findings showing that the child's best interests are being served.
D.L., 486 N.W.2d at 380.
Here, the trial court made detailed findings in support of its conclusion that K.L.L.'s best interests would be served by granting K.D.'s petition. Whereas the record supports the trial court's finding that petitioners in both homes are able to provide K.L.L. with loving and adequate child care, the trial court did not clearly err in rejecting appellant's and social worker Faye's concerns regarding K.D.'s parenting abilities. See Minn.R.Civ.P. 52.01; Sefkow v. Sefkow, 427 N.W.2d 203, 210 (Minn.1988) ("deference must be given to the opportunity of the trial court to assess the credibility of the witnesses").
The trial court credited Dr. Friedrich's testimony that establishing a sibling tie with J.S. is not as crucial to K.L.L. as maintaining her secure attachment to K.D. Considering that Dr. Friedrich observed the interaction between K.D. and K.L.L. and Dr. Hall did not, we cannot say that the trial court erred in discounting the contrary "generic" views that Dr. Hall expressed. See In re Welfare of J.M.G., 376 N.W.2d 494, 498 (Minn.App. 1985) ("where opinions of experts conflict * * * the finder of fact is to determine the more credible and acceptable view"), pet. for rev. denied (Minn. Jan. 17, 1986).
The trial court also rejected the Commissioner's secondary concern pertaining to possible enmeshment with the birth family if K.L.L. is placed in the Rochester area. Outside of K.L.L.'s contacts with her half brother, T., which were approved by the county, members of K.L.L.'s birth family have not sought any involvement with K.L.L. The record supports the trial court's finding that there is no evidence of family enmeshment problems regarding K.L.L. The possibility of unwanted contacts in the future is too *623 speculative to weigh significantly against K.D.'s petition.
Finally, the trial court concluded that K.D.'s status as a single parent was not a factor because the record did not contain credible evidence showing that single-parent adoptions are per se inadvisable. However advantageous a two-parent home may be, we believe that the trial court was within its discretion in finding that it is not a significant factor in this case.
We recognize, as did the trial court, that this is a close case. We express neither a preference for foster parent adoptions, nor a rejection of the Commissioner's policy favoring placement of siblings in the same home. Based upon our review of the record and the trial court's detailed findings, we hold that, under the unique circumstances of this case, the trial court acted within its broad discretion in concluding that it is in K.L.L.'s best interests to be adopted by K.D.
3. The parties raise three other issues that require brief discussion.
(a) Appellant argues that the trial court's order and resulting judgment on the posttrial motions are of no effect, because they were issued after this appeal was taken from the original judgment on the merits. Generally, upon the filing of an appeal, the trial court loses jurisdiction to amend or modify matters at issue on appeal, or necessarily involved in the appeal. Spaeth v. City of Plymouth, 344 N.W.2d 815, 824 (Minn. 1984). But in this case, we have considered the trial court's ruling on the posttrial motions "for the insight it affords." See Evans v. Blesi, 345 N.W.2d 775, 780 (Minn.App. 1984), pet. for rev. denied (Minn. June 12, 1984).
(b) K.D. moves to strike a respondent's brief filed by the Commissioner, which challenges the trial court's decision. This court has refused to consider issues raised solely by an aggrieved party who did not file an appeal nor join in the present appeal. See Nash v. Allen, 392 N.W.2d 244, 247 (Minn. App.1986), pet. for rev. denied (Minn. Oct. 22, 1986). Here, the Commissioner's brief essentially supports appellant's position, and does not raise separate issues. Under the circumstances, we decline to strike the Commissioner's brief because K.D. has not established substantial prejudice.
K.D. also moves to strike a letter submitted by counsel for L.S. and T.S. The motion is granted to the extent that the letter refers to the merits of the appeal.
(c) K.D. requests an award of attorney fees for responding to the appeal and for fees incurred in preparing the motion to strike. We conclude that the appeal is not frivolous, and no award of attorney fees is warranted. See Minn.Stat. § 549.21, subd. 2 (1992).

DECISION
The presence of the child's minor sibling in nonrelatives' home does not invoke the preference for adoptive placement with a relative under Minn.Stat. § 259.28, subd. 2. Under the facts of this case, the trial court did not abuse its broad discretion in concluding that the child's best interests would be served by granting the foster parent's adoption petition.
Affirmed.
NOTES
[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.