**In re the ADOPTION OF C.H.**

**and**

**In re the ADOPTION OF A.H.**

No. C0–96–62.

Supreme Court of Minnesota.

Oct. 31, 1996.

---

Gary A. Debele, Minneapolis, for John and Marie Cummings.

Hubert H. Humphrey, III, Attorney General, St. Paul, Julie K. Harris, Robert V. Sauer, Assistant Attorneys General, for Commissioner of Human Services.

James Reuter, Chisago County Attorney, Center City, Alfred S. Alliegro, Assistant Chisago County Attorney, for Chisago County.

Kenneth J. Jacobs, Forest Lake, for Thomas and Alesia Hunter and Samuel and Lorraine Holmes.

Timothy Peterson, Lindstrom, for guardian ad litem.

## OPINION

STRINGER, Justice.

This matter involves the competing adoption petitions of the foster parents and the biological relatives of the minor children C.H. and A.H.. After a seven-day trial, the district court concluded that it was in the best interests of the children to grant the adoption petition of the foster parents subject to visitation rights in favor of the children's relatives—an arrangement commonly referred to as an "open adoption." [1] The court

1. We use the term "open adoption" in reference to a variety of arrangements involving information sharing, communication, physical contact or visitation between birth families, adoptive families and the adoptive children.

of appeals reversed the trial court and ordered that the adoption petition of the relatives be granted, determining that the trial court incorrectly applied the relative preference provision of Minnesota Statutes section 259.57, and that there was insufficient evidence to support the trial court's determination that adoption by the foster parents was in the children's best interests. The court of appeals also concluded that open adoption arrangements such as that imposed by the trial court are not recognized by Minnesota law. We agree with the court of appeals as to the non-enforceability of open adoptions in Minnesota, but reverse with respect to its order granting the adoption petition of the relatives. We conclude that the trial court gave proper consideration to the statutory preference for adoptive placement with relatives and that the trial court's findings and conclusions regarding the best interests of the children were supported by substantial evidence.

C.H. was born on October 10, 1987 and A.H. was born on January 12, 1989. In 1991, the children's paternal aunt Alesia Hunter became concerned that the children were being neglected by their biological parents and reported her concerns to the Chisago County Department of Human Services. The following year Mrs. Hunter and her husband Thomas Hunter accepted custody of both children but A.H. began to exhibit rather severe behavioral problems. Therefore, after about six months, A.H. was placed with her grandparents (Alesia Hunter's parents) Samuel and Lorraine Holmes so that she could receive more "one on one" attention. The children remained so placed for the next year.

In the spring of 1993, the Hunters and the Holmeses (collectively the "Hunter/Holmes") discussed with Lori Karp, a Chisago County Social Worker, the prospect of terminating parental rights to the children and placing them for adoption. Shortly thereafter, the children's biological parents voluntarily terminated their parental rights. The biological parents, who now reside in Wisconsin, have not contacted the children and did not participate in the adoption proceedings. All ac-

tions and decisions of the Hunter/Holmes family subsequent to the termination have been made in concert by the four Hunter/Holmes.

The Hunter/Holmes did not initially seek to adopt the children themselves, but, prior to the termination of parental rights, they expressed to Ms. Karp the qualities they desired in an adoptive family, including a willingness to maintain contact between the children and their natural relatives. Ms. Karp reviewed the state adoption list and identified John and Marie Cummings as meeting all the criteria specified by the Hunter/Holmes. The Cummings then met with the Hunter/Holmes and Ms. Karp and discussed an open adoption. On August 23, 1993, Alesia and Thomas Hunter and John and Marie Cummings signed an "agreement for continued contact" which provided for a minimum of three visits per year between the children and their natural relatives and also provided for telephone and mail correspondence. That same day, the Cummings assumed custody of C.H. and A.H. on a foster care basis while their petition to adopt, filed in June 1994, was considered.

Upon arriving at the Cummings home, the children were placed in pre-school programs. The four Hunter/Holmes visited in October and there were several telephone contacts between the children and the Hunter/Holmes. Shortly after the October visit, however, C.H.'s school teacher alerted Marie Cummings to behavioral changes in C.H. and suggested that contact with the Hunter/Holmes be temporarily cut off. In December 1993, Marie Cummings decided that contact with the children's relatives was causing the children distress so she terminated such contacts and arranged for a psychologist to counsel the children. In the following months, the parties, with the involvement of social workers and the psychologist, negotiated regarding the terms of visitation but to no avail, and the parties gradually became estranged. The Cummings filed a petition to adopt C.H. and A.H. in June 1994 and the Hunter/Holmes each filed their own petition to adopt the children.[2] The Commissioner of

---

2. Alesia and Thomas Hunter filed a petition to adopt the children on May 26, 1994. Samuel

Human Services consented to adoption by the Cummings in December 1994; the Hunter/Holmes petitions were rejected on the ground that the Commissioner could consent to only one petition.

The Chisago County District Court Judge chose to consider all three adoption petitions in one hearing. After a seven day trial on the competing adoption petitions, in which fifteen witnesses testified, the court issued an order with extensive findings of fact, including the following:

● The home of John and Marie Cummings is a stable and satisfactory one and C.H. and A.H. have adjusted well to the surrounding community. In particular, the children are doing well in school, are involved in the local Catholic church, and are thriving emotionally, physically, and psychologically.

● The Cummings have demonstrated an ability to recognize and attend to the children's needs, as shown by their seeking professional psychological help for the children when it was warranted.

● The children are attached to the Cummings, refer to them as "mom and dad," and would suffer harm if removed from the Cummings home.

● The home of Samuel and Lorraine Holmes is a stable one but the Holmeses might be too old to adequately parent C.H. and A.H.

● Based on Thomas Hunter's testimony that he attends Alcoholics Anonymous meetings "when he feels he needs it" and the fact that he had two DWI convictions in the four years prior to trial, Thomas Hunter has not taken adequate steps to control his drinking problem.

● Alesia Hunter once filed a domestic abuse complaint against Thomas Hunter and Thomas Hunter has inappropriately applied excessive physical discipline to C.H. in the past. While Thomas Hunter sincerely intends to change his discipline methods, given his potential for alcohol abuse, good intentions might not be enough and the Hunter home therefore could not offer the same level of stability as the Cummings home.

The court concluded that it was in the best interests of the children that the adoption petition of the Cummings be granted subject to an open adoption arrangement whereby the Hunter/Holmes would be allowed to correspond with the children and visit with them several times each year and entered its order accordingly. On the Hunter/Holmes' appeal, the court of appeals reversed, holding that the trial court's findings were insufficient to overcome the preference for adoptive placement with relatives contained in subdivision 2 of Minnesota Statutes section 259.57 and that Minnesota does not recognize open adoptions. *In re C.H.*, 548 N.W.2d 292, 294, 297 (Minn.App.1996).

We first address the issue of whether a trial court has the authority to grant an adoption petition subject to an enforceable open adoption arrangement. The trial court granted the Cummings' adoption petition based upon a requirement that there be four yearly visits and other communication between the children and the Hunter/Holmes— a visitation requirement the court might be expected to impose in resolving a child custody matter in the context of a marriage dissolution.

Adoption is a creation of statute and therefore the court's authority in matters relating to adoption is limited to the authority set forth by statute. *In re D.L.*, 486 N.W.2d 375, 379 (Minn.1992). The policy of this state with respect to the relationship of the children to biological parents and to adoptive parents is very clear: after the adoption petition is granted, for all purposes the children are deemed to be the children of the adoptive parents without conditions, qualifications or exceptions.

Upon adoption, the child shall become the legal child of the adopting persons and they shall become the legal parents of the child with all the rights and duties between them of birth parents and legitimate child * * *. After a decree of adoption is en-

---

and Lorraine Holmes filed their own petition to adopt on October 28, 1994. All the Hunter/Holmes subsequently indicated that they would be happy if either Hunter/Holmes family's petition was granted and they were represented jointly throughout the adoption proceedings.

tered the birth parents of an adopted child shall be relieved of all parental responsibilities for the child, and they shall not exercise or have any rights over the adopted child or the child's property. The child shall not owe the birth parents or their relatives any legal duty nor shall the child inherit from the birth parents or their kindred except as provided in subdivision 1a.

Minn.Stat. § 259.59, subd. 1 (1994). Implicit, if not explicit, in this statutory declaration is that, in granting an adoption petition, the court has no authority to impose conditions—an adoption petition is either granted or it is denied. There is no middle ground in our statutory scheme.[3] Because adoption is so exclusively a creature of statute, imposing conditions, such as the trial court did here in the nature of open adoption arrangements, can only be done pursuant to some legislative authority—an authority unequivocally absent in our laws or legislative policy relating to adoptions. While visitation with the biological family might be in a child's best interests, that is a decision the legislative policy directs should be made by the child's adoptive parents, not by the courts.

We recognize that it is not uncommon for a biological family to make informal arrangements with the adoptive parents as to the children's relationship with the biological family after the adoption. For many children such an arrangement providing for continued contact with the biological family may well be in the children's best interests, particularly when a complete severance of the relationship with the birth family would be traumatic or would prevent a harmonious adjustment to the adoptive family. In reaching our conclusion in this important matter, we are mindful of these considerations and it

is not our intention to suggest that there is a legal impediment or state policy disapproving of such arrangements. We simply hold that until such time as the legislature determines that state policy favors open adoptions and specifically authorizes such arrangements, it is beyond the power of a court granting an adoption petition to mandate continuing visitation with the biological family.

■ We now turn to whether the trial court failed to properly take into account the family preference provision of Minnesota Statutes section 259.57 when it granted the Cummings' adoption petition. Minnesota Statutes section 259.57 provides that, "if the court finds that it is in the best interests of the child that the petition be granted, a decree of adoption shall be made and recorded in the office of the court administrator, ordering that henceforth the child shall be the child of the petitioner." Minn.Stat. § 259.57, subd. 1(a) (1994). The issue here is when, and under what circumstances, the petition for adoption of members of the children's family should be given preference over the competing petition of a nonbiological petitioner. In this respect section 259.57 further provides:

> The policy of the state of Minnesota is to ensure that the best interests of children are met by requiring due, not sole, consideration of the child's race or ethnic heritage in adoption placements * * *. [I]n determining appropriate adoption, the court shall give preference, in the absence of good cause to the contrary, to (a) a relative or relatives of the child, or, if that would be detrimental to the child or a relative is not available, to (b) a family with the same racial or ethnic heritage as the child * * *.[4]

3. Minn.Stat. § 257.022 (1994) provides further indicia that a court does not have the authority to order an open adoption. While the statute allows a court to grant visitation rights to parents or grandparents of a child after a dissolution of marriage, legal separation, annulment or determination of parentage if it finds that such visitation would be in the best interests of the child, the statute provides an exception for adopted children:

> This section shall not apply if the child has been adopted by a person other than a stepparent or grandparent. Any visitation rights

granted pursuant to this section prior to the adoption shall be automatically terminated upon such adoption.

Minn.Stat. § 257.022, subd. 3 (1994).

4. The preference for a parent of the child's race was not an issue in this case as all of the parties seeking to adopt C.H. and A.H. are of the same race and claim basically the same heritage and culture.

Minn.Stat. § 259.57, subd. 2. The court of appeals held that section 259.57, subdivision 2 *mandates* adoptive placement with relatives, absent a showing of detriment to the child or other good cause to the contrary. *In re C.H.*, 548 N.W.2d at 298. Concluding that the trial court's findings were insufficient to establish the existence of either detriment or the good cause necessary to overcome the relative preference, the court of appeals reversed the grant of the Cummings' adoption petition and remanded the matter to the trial court with directions to grant one of the Hunter/Holmes petitions. *Id.* at 299–300. We disagree with the court of appeals' analysis on this issue, and because we deal here with a matter of statutory interpretation, our review is *de novo. Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

Our analysis begins with *In re M.M.*, 452 N.W.2d 236 (Minn.1990), where we stated that when a child's natural parents are unable to care for the child, there is a strong preference for awarding permanent custody of the child to a relative. *Id.* at 238. Interpreting the predecessor to section 259.57,[5] we held that the statute required placement with a relative absent an affirmative showing that such a placement would be detrimental to the child. *Id.* at 239. We construed detriment as meaning "either a demonstrated actual injurious impact of the relationship on the physical or emotional well-being of the child or a showing to a reasonable degree of certainty that the facts and circumstances of the proposed placement pose the substantial likelihood that actual harm will occur." *Id.* We further stated that the best interests of the child standard was not included in that portion of the inquiry. *Id.* It was this version of the relative preference analysis that the court of appeals applied to the trial court's findings here. *See In re C.H.*, 548 N.W.2d at 298 (quoting *In re M.M.*, 452 N.W.2d at 239).

■ The inquiry of the court of appeals should not have ended there, however, because, subsequent to *M.M.*, this court and the legislature further refined the application of the relative preference to make it clear that the preference is only one factor to be considered in determining the overall best interests of the child; it is not a mandatory directive to be overcome only by a showing of emotional or physical harm. In considering the effect of the relative preference on two competing adoption petitions in *In re D.L.*, 486 N.W.2d 375, we reiterated our holding in *M.M.* that adoptive placement with relatives is presumed unless good cause to the contrary or detriment to the child is shown. *Id.* at 380. There we noted that the power to grant an adoption is purely statutory and stated that adoption statutes should be liberally construed to effectuate their purpose, substantial compliance with the statutes being sufficient to sustain the validity of an adoption proceeding. *Id.* at 379. We concluded that the trial court has broad discretion to determine what constitutes "good cause" and "detriment" in a particular case and the statutory preference does not require that relatives' adoption petitions be granted automatically. *Id.* at 380. Rather, "[t]he touchstone of our analysis, as always, is the best interests of the child * * *." *Id.* at 377.

After the court's decision in *D.L.*, the legislature changed the relative preference standard in a way that made it even clearer that the preference is not to be applied so as to override the overall best interests of the child. At the time *M.M.* and *D.L.* were decided, the statutes containing the relative preference required the courts to give "due consideration of the child's race or ethnic heritage" in making placement decisions. *See* Minn.Stat. §§ 260.181, subd. 3 (1988), and 259.28, subd. 1(a) (1990). In 1993, however, the legislature amended the statute to require "due, *not sole*, consideration" of such factors. Act of May 19, 1993, ch. 291, § 12,

5. At the time *M.M.* was filed, the relative preference provisions of the adoption statutes were found in Minn.Stat. § 260.181, subd. 3 (1988). *M.M.*, 452 N.W.2d at 238. By the time the court decided *In re D.L.*, 486 N.W.2d 375 (Minn.1992), the wording of the statute had been changed and it had been renumbered as § 259.28, subd. 2 (1990). *See D.L.*, 486 N.W.2d at 377. Then, prior to the court's decision in *In re S.T. and N.T.*, 512 N.W.2d 894 (Minn.1994), the statute was again renumbered as § 259.255, subd. 2. (1993). *See S.T. and N.T.*, 512 N.W.2d at 898. Since then the statute has been renumbered twice more and it is currently cited as Minn.Stat. § 259.57, subd. 2 (1994).

1993 Minn. Laws 1628 (emphasis added). Thus, once again, we are instructed that the legislature views the preference as *a factor* to be considered along with other factors in determining the best interests of the child rather than a mandatory, overriding directive.

Finally, in *In re S.T. and N.T.*, 512 N.W.2d 894 (Minn.1994), we considered a case in which the Commissioner of Human Services had refused to consent to an adoption by the child's foster parents because placement with a relative was possible. While noting that the adoption statute does establish a strong preference for adoptive placement with relatives, we rejected the Commissioner's argument that the statutory preference made its refusal reasonable as a matter of law and stated that:

> A preference is only a preference. It is not a commandment to be followed blindly or mechanically irrespective of the particular needs of individual children * * *. Our interpretation of these adoption statutes is guided by the fundamental purpose of the entire procedural scheme. That purpose is to determine the best interests of the child * * *. Because the decision to grant or deny consent to an adoption cannot be made without considering the particular situation of the child, the trial court must be free to examine all relevant evidence to determine whether the Commissioner's action was in the best interests of the child.

*Id.* at 898. The fact that there is a relative available who might be a suitable adoptive parent does not mean that the foster parents are precluded from attempting to overcome the relative preference by showing that permanent placement in their home is in the child's best interests. *Id.* Thus, *S.T. and N.T.* makes it clear that "good cause" to depart from the preference, and "detriment" to a child, are to be viewed as part of an overall consideration of the best interests of the child.

In any particular case, however, the trial court has a substantial degree of latitude in determining whether the relative preference of section 259.57 is controlling.

> The terms "best interests," "good cause to the contrary" and "detriment" do not lend themselves to standardized definitions. The best interests of potential adoptees will vary from case to case, and the trial court retains broad discretion because of its opportunity to observe the parties and hear the witnesses. In exercising that discretion, a trial court must make detailed factual findings showing that the child's best interests are being served. But the nature of those findings is not subject to a precise formula because they will vary according to the fact situation.

*In re D.L.*, 486 N.W.2d at 380–81 (citing *In re Jordet*, 248 Minn. 433, 442–43, 80 N.W.2d 642, 648 (1957)).

It is our view that the trial court's detailed findings of fact are well substantiated by the evidence and thoroughly support its conclusion that the Cummings petition should be granted. While the testimony of different witnesses regarding many of the factual matters determined by the trial court was in some instances contradictory, we are once again reminded that "findings of fact based on conflicting evidence will not be disturbed on appeal unless manifestly and palpably contrary to the evidence as a whole even though [the reviewing court] might have found the facts to be different." *Dexheimer v. Bratrude*, 254 Minn. 145, 152, 94 N.W.2d 359, 364 (1959). The trial court had the best opportunity to observe the various witnesses and assess their credibility and its conclusions cannot be said to be clearly erroneous.

We affirm the order of the court of appeals as to its conclusion that the open adoption provision of the trial court's order is unenforceable, but reverse as to the part of its order remanding this matter to the trial court with directions to grant either the Holmes' or the Hunter's petition. We reinstate the district court order granting the adoption petition of John and Marie Cummings with the exception of the provisions requiring court enforced visitation with the biological relatives.

Reversed in part and affirmed in part.

COYNE, J., took no part in the consideration or decision in this case.