**In the Matter of the Petition of K.L.B. and J.A.B. to adopt L.J.D.**

No. A08–1292.

Court of Appeals of Minnesota.

Dec. 30, 2008.

John M. Jerabek, Niemi, Barr & Jerabek, P.A., Minneapolis, MN, for appellants K.L.B. & J.A.B.

Rita K. Morris, Morris & Wolf, Shakopee, MN, for respondent Judy Peik.

Jeanne M. Conkel, Glencoe, MN, for respondents T.D. & C.D.

Amy E. Olson, Glencoe, MN, for respondent McLeod County Social Services.

Wright S. Walling, Walling & Berg, P.A., Minneapolis, MN, for respondent Kathy Roering.

Considered and decided by KLAPHAKE, Presiding Judge; LANSING, Judge; and HUSPENI, Judge.*

## O P I N I O N

KLAPHAKE, Judge.

This appeal concerns the district court's dismissal of the adoption petition filed by appellants K.L.B. and J.A.B. (appellants), the maternal aunt and uncle of L.J.D., a severely brain-injured child. Three other petitions to adopt L.J.D. and his brother, C.T.D., had been previously filed: one by the children's paternal grandparents; one by their maternal grandmother, Kathy Roering; and one by a foster parent couple, T.D. and C.D. (respondents). All of the early petitioning parties reached an agreement that Roering would adopt C.T.D. and that respondents would adopt L.J.D. The district court accepted the agreement and issued an order finding it to be in the children's best interests and granting the relevant petitions. Before the court held a final adoption hearing, however, appellants petitioned to adopt L.J.D. Roering, respondents, and the guardian ad litem each moved to dismiss appellants' petition. The district court granted the motions to dismiss the petition, and this appeal followed.

## FACTS

L.J.D., born on July 18, 2006, and his brother C.T.D., born on August 5, 2004, initially lived with their parents in McLeod County. When L.J.D. was ten weeks old, he suffered a severe brain injury and 31 broken bones. He was flown to Minneapolis for emergency treatment and hospi-

talized for a month. L.J.D. now has permanent and extensive brain damage that, according to the district court's findings, will cause him to "have serious limitations of vision, communication, and movement." The district court terminated the parents' rights to the children on March 1, 2007.

C.T.D. was initially placed with his paternal grandparents, and L.J.D. was initially placed with respondents. Both children were subsequently placed with the paternal grandparents, but three weeks later the children were removed from this placement because the paternal grandparents allowed the children to have contact with the parents. L.J.D. was returned to respondents, where he has since resided. C.T.D. was placed with Roering in October 2007 as a pre-adoptive placement, where he has since resided.

In the spring of 2007, the paternal grandparents, respondents, and Roering petitioned to adopt both children. These petitioners subsequently agreed that Roering should adopt C.T.D. and respondents should adopt L.J.D. The parties also stipulated that the children should maintain contact with the paternal grandparents and with each other. By court order, the district court found this agreement to be in the children's best interests and incorporated the agreement into the adoption plan.

After appellants learned of the adoption plan, they initiated their own petition to adopt L.J.D. on February 29, 2008.[1] Six months earlier, in response to a relative search questionnaire initiated by the county in connection with the first three petitions, appellants declined to seek to adopt the children and indicated their support for Roering's adoption petition. They also

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Appellants filed their adoption petition in their county of residence, Crow Wing, but later agreed to transfer venue to McLeod County.

met with a caseworker and guardian ad litem on September 6, 2007, again indicating that they did not wish to compete with Roering's petition to adopt the children.

Respondents, McLeod County, and L.J.D.'s guardian ad litem moved to dismiss appellants' petition. Following a hearing, the district court found that appellants' petition was untimely under Minn. R. Adoption P. 40.02 and barred by the doctrine of laches. The court determined that it was in the children's best interests to proceed with the final adoption hearing. The district court dismissed appellants' petition to adopt L.J.D. and scheduled the final adoption hearing on respondents' and Roering's petitions for May 22, 2008. The district court later suspended the final adoption hearing pending this appeal. Appellants challenge the district court's order dismissing their adoption petition.

## ISSUE

Did the district court abuse its discretion under the Minnesota Rules of Adoption by dismissing appellants' adoption petition as untimely?

## ANALYSIS

■ Appellate courts review a district court decision on whether to grant an adoption petition for abuse of discretion. *In re Welfare of D.L.*, 479 N.W.2d 408, 413 (Minn.App.1991), *aff'd*, 486 N.W.2d 375 (Minn.1992). A reviewing court will not disturb a district court's factual findings unless they are clearly erroneous. *In re Adoption of C.H. & A.H.*, 554 N.W.2d 737, 743 (Minn.1996). This court reviews the district court's interpretation of adoption statutes and rules de novo. *Id.* at 742 (statutes); *see Rubey v. Vannett*, 714 N.W.2d 417, 421 (Minn.2006) (rules).

■ "The power to decree an adoption being purely statutory, the statute is

the measure of the court's authority. Adoption statutes, however, are to be liberally construed to accomplish their purpose, and there need not be more than a substantial compliance with their requirements to sustain the validity of the proceeding." *In re Adoption of Anderson*, 235 Minn. 192, 197, 50 N.W.2d 278, 283 (1951); *see* Minn.Stat. § 259.23, subd. 3 (2006) (providing that adoption petitions are subject to rules promulgated by the supreme court).

■ The touchstone of any adoption analysis is always the best interests of the child. *C.H.*, 554 N.W.2d at 743 (approving best-interests factor analysis of application of biological family preference to resolve competing adoption petitions between foster parents and biological relatives); *see In re Petition to Adopt S.T. & N.T.*, 512 N.W.2d 894, 898 (Minn.1994) ("Our interpretation of these adoption statutes is guided by the fundamental purpose of the entire procedural scheme. That purpose is to determine the best interests of the child."); Minn.Stat. §§ 259.20, subd. 1(1) (2006) (stating that best interests of children is statutory purpose to be met in adoption law); .57, subd. 1(a), (b) (2006) (requiring district court to base its decision to grant or deny adoption petition on best interests of child).

### *Rule 40.02*

■ With some exceptions, an adoption petition must generally be filed within a year of a child's placement in a prospective adoptive home. Minn.Stat. § 259.22, subd. 4 (2006). The statute does not otherwise establish time requirements for the filing of a petition. Under Minn. R. Adoption P. 40.02, however, the district court may, either on motion by a party or sua sponte, dismiss an adoption petition. The rule lists seven specific grounds for dismissal,

one of which is "failure to move forward with the petition." *Id.* The rule also states that dismissal is not limited to these seven listed grounds. *Id.*

Here, the district court made numerous findings supporting the conclusion that appellants' adoption petition was untimely. These findings include appellants' previous disinterest in adopting the child. Further, appellants did not file their petition until ten months after the three other petitions were filed, after the county had investigated and ensured the suitability of the other petitioners as adoptive placements, and four-and-one-half months after those petitioners had reached a settlement agreement that was ultimately approved by the Commissioner of Human Services (commissioner) and the district court. Appellants' petition was filed just before finalization of the adoption. The court concluded that "[s]ince Rule 40.02(b) confers discretion on the trial court to dismiss a timely petition for foot dragging, it is rational to infer that the trial court is similarly authorized to dismiss a petition that wasn't timely filed in the first place."

■ We conclude that the district court's interpretation of rule 40.02 is reasonable. While timeliness of the petition is not included in the non-exclusive list of grounds for dismissal under the rule, the rule grants broad authority to the district court. If a court has discretion under the rule to dismiss an adoption petition that has already been filed, the court must also be allowed to exercise its discretion to dismiss a petition that is filed so late in the adoption process. This conclusion is also consistent with the objective of the adoption statute to ensure the best interests of children by making their adoptive placements in a timely manner. Under these circumstances, the district court did not err in interpreting rule 40.02 as authorizing it to exercise discretion regarding whether to dismiss an untimely adoption petition.[2]

*Best Interests of L.J.D.*

■ The record also supports the district court's conclusion that L.J.D.'s adoption by respondents is in his best interests. The record shows that L.J.D. has received, by all accounts, exemplary care from respondents, and this is notable in light of his need for 24–hour specialized care and continuing medical treatment. L.J.D. has lived in respondents' home since shortly after his birth more than two years ago, and his need for permanency supports continued placement with them. By contrast, appellants did not visit L.J.D. after he was hospitalized and only appellant K.L.B. has visited him since then, during one four-hour group visit in February 2008. Further, the other petitioners have, with county and court approval, resolved their petitions in a manner that is conducive to a cooperative adoptive placement that maintains contact between the children, extended family, and respondents. While appellants argue that a family preference should apply, the best-interests analysis weighs more heavily than this preference. *See C.H.,* 554 N.W.2d at 743. Thus, a best-interests analysis also supports the district court's decision to dismiss appellants' adoption petition. For all of these rea-

2. As a separate basis for dismissing appellants' petition, the district court applied the doctrine of laches. Generally, laches is an equitable bar to a legal or equitable claim that is brought after unreasonable delay and that results in prejudice. *See Weed v. Comm'r of Revenue,* 489 N.W.2d 525, 530 (Minn.App. 1992), *review denied* (Minn. Sept. 15, 1992). While we agree that allowing appellants' petition to go forward would prejudice the other parties to the adoption proceedings, particularly the subject children, we decline to reach this issue because we conclude that the dismissal was appropriate under the rule.

sons, we conclude that the district court did not abuse its discretion in dismissing appellants' adoption petition.

Appellants assert that Minn. R. Adoption P. 42.03, subd. 2, supports their claim that the court lacked authority to dismiss their adoption petition. Rule 42 generally sets forth procedures for consolidating or bifurcating adoption proceedings. Minn. R. Adoption P. 42.03, subd. 2, requires the district court to bifurcate an adoption trial on contested adoption petitions, and then to either dismiss or grant the petition, based on a determination whether the commissioner unreasonably withheld consent for a petitioner to adopt.

Rule 42.03, subd. 2, simply does not apply in this case. Here, the issue is not how contested petitions should be evaluated in light of the consent determination made by the commissioner, but whether under these facts appellants' petition was timely. Because rule 42.03, subd. 2, does not address the timeliness of appellants' petition, it does not control here.

## DECISION

Because the district court did not abuse the discretion afforded it under Minn. R. Adoption P. 40.02 by dismissing appellants' adoption petition as untimely, we affirm.

**Affirmed.**