*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0136**

In re the Marriage of:
Kylie Jo McCuen, petitioner,
Appellant,

vs.

Joshua William McCuen,
Respondent.

**Filed November 21, 2016
Affirmed
Bjorkman, Judge**

Nobles County District Court
File No. 53-FA-14-210

William J. Wetering, Hedeen, Hughes & Wetering, Worthington, Minnesota (for appellant)

Aaron M. Kinser, Ahlquist & Wiltrout, LLP, Worthington, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant-mother challenges an order modifying parenting time. Because the district court did not abuse its discretion in modifying parenting time, we affirm.

**FACTS**

Appellant-mother Kylie Jo McCuen and respondent-father Joshua William McCuen were married in September 2007. They have three children, born February 2009, December 2010, and August 2012. In 2014, the marriage was dissolved pursuant to a marital termination agreement. The parties stipulated that they would share legal custody of the children, mother would have sole physical custody, and father would have parenting time on days he was not working. Father was subsequently promoted at work, as a result of which he works fewer days.

In September 2015, father moved to modify parenting time to reflect his new work schedule. The proposed schedule increased father's parenting time from approximately 33% to approximately 47%. Mother opposed the motion, arguing that father was, in effect, seeking to modify custody. Mother also alleged father had not exercised his existing parenting time and she questioned his parenting ability.[1] The district court concluded that father's proposed parenting-time schedule would not change physical custody or the children's primary residence. Accordingly, the district court applied the parenting-time modification statute, Minn. Stat. § 518.175 (2014). The district court considered the twelve best-interests factors set out in Minn. Stat. § 518.17, subd. 1 (Supp. 2015), concluding that eight factors were neutral and four favored father's motion. Specifically, it found the "willingness and ability of each parent to provide ongoing care" for the children, to meet their needs, and to maintain consistency; the effect on the children's ongoing familial relationships; the "benefit in maximizing parenting time with

---

[1] The district court considered 15 affidavits regarding parenting ability.

2

both parents" without limiting either parent's parenting time; and the potential reduction in animosity between the parties weighed in favor of father's proposed parenting-time schedule.

In addition to awarding father more parenting time to reflect his new work schedule, the district court's order corrects clerical errors in the original parenting-time schedule and modifies holiday and vacation time to better accommodate both parties' schedules. Mother appeals, only challenging the modifications based on father's new work schedule.

## D E C I S I O N

> The district court has broad discretion in determining parenting-time issues and will not be reversed absent an abuse of that discretion. A district court abuses its discretion if its findings are unsupported by the record or if it misapplies the law. A district court's findings of fact underlying a parenting-time decision will be upheld unless they are clearly erroneous.

*Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009) (citations omitted). Mother argues that (1) the district court applied the wrong legal standard because the amended parenting-time schedule modifies physical custody and changes the children's primary residence and (2) certain of the district court's findings of fact lack record support. We address each argument in turn.

## I. The district court applied the proper legal standard.

Mother contends the district court erred by failing to apply Minn. Stat. § 518.18 (2014). This statute, entitled "Modification of Order," governs modification of custody orders and the primary-residence provisions of parenting plans. It only permits

modification in limited circumstances, such as unwarranted interference with an existing parenting plan, prior agreement of the parties to apply the best-interests standard in a court-approved writing, agreement of the parties, child endangerment, and relocation by the custodial parent in violation of a court order. Minn. Stat. § 518.18(d).

Minn. Stat. § 518.175, entitled "Parenting Time," provides that a parenting-time order may be modified so long as the change "would serve the best interests of the child" and would not change the child's primary residence. Minn. Stat. § 518.175, subd. 5(a). But the statute does not permit a district court to restrict parenting time unless the child would be endangered or the parent subject to the reduction has "chronically and unreasonably failed to comply with court-ordered parenting time." Minn. Stat. § 518.175, subd. 5(b). A modification that increases a party's parenting time to between 45.1% and 54.9% does not restrict the other party's parenting time. *Id.*

Mother acknowledges that the increase in father's parenting time to 47% does not constitute a restriction on mother's time.[2] She also concedes that the issue "is not a math problem," but she argues that the order effectively awards father joint physical custody. We disagree. This court rejected a similar argument in *Geiger v. Geiger,* where we concluded that parenting time of nearly 50% did not give a father "de facto" joint physical custody. 470 N.W.2d 704, 706 (Minn. App. 1991), *review denied* (Minn. Aug.

---

[2] Mother also contends the district court should have held an evidentiary hearing. The district court must conduct such a hearing only if there is a substantial modification or adjustment of parenting time, which "depends on whether parenting time was restricted." *Matson v. Matson*, 638 N.W.2d 462, 468 (Minn. App. 2002). Because the modification to 47% parenting time in this matter is not a restriction, the change does not require an evidentiary hearing.

4

1, 1991). And in the context of distinguishing between joint and sole physical custody, we are guided by the designation of the court or parties' stipulation rather than the amount of time each party actually spends with the child. *See, e.g., Frauenshuh v. Giese,* 599 N.W.2d 153, 156-57 (Minn. 1999) (following the parties' stipulation and rejecting an argument based on time spent with the child); *Nolte v. Mehrens,* 648 N.W.2d 727, 730 (Minn. App. 2002) (noting that "the label the parties place on their stipulated custodial arrangement is binding"). In short, simply comparing the percentages of time spent with each parent is not dispositive of the child's custody status or primary residence.

More recently, this court confirmed that we will not "infer [a] modification or change" "absent an agreement by the parties or an indication by the district court that it intended to modify physical custody or change the child's primary residence." *Suleski v. Rupe,* 855 N.W.2d 330, 335-36 (Minn. App. 2014). In *Suleski*, the district court modified the parenting-time schedule to increase Rupe's parenting time in the summer months from two nights and every other weekend to all weekdays. *Id.* at 333-34. Suleski contended that this effectively changed the child's primary residence in the summer, and that the district court erred in doing so without conducting an evidentiary hearing and following the procedures set out in Minn. Stat. § 518.18(d). *Id.* at 334-35. We rejected these arguments for two reasons. First, we observed that the challenged order does not, by its terms, modify custody or the child's primary residence (defined as "the principal dwelling or place where the child lives"). *Id.* at 335. Second, we determined that even though Rupe's parenting time had increased, Suleski retained the majority of the parenting time over the course of a year. *Id.*

5

As in *Suleski,* father did not request and the district court did not order a change in physical custody or the children's primary residence. While the amended parenting-time schedule significantly increases father's parenting time, it is undisputed that mother retains the majority—53%—of the parenting time. Because we conclude the district court did not err by applying the more liberal parenting-time modification statute, we turn our analysis to the court's factual determinations.

## II.    The district court's findings of fact are not clearly erroneous.

We will affirm the findings of fact underlying a district court's parenting-time decision unless they are clearly erroneous. *Dahl*, 765 N.W.2d at 123. We defer to a district court's determinations of credibility, *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000), and "do not disturb 'findings of fact based on conflicting evidence . . . unless [the findings are] manifestly and palpably contrary to the evidence as a whole.'" *In re S.G.*, 828 N.W.2d 118, 127 (Minn. 2013) (quoting *In re the Adoption of C.H.,* 554 N.W.2d 737, 743 (Minn. 1996)).

Mother argues that the district court clearly erred in finding that "the statutory factor regarding the history and nature of each parent's participation in providing care for the children" is neutral. And she generally asserts that a number of the district court's twelve best-interests findings are conclusory because they are prefaced with the phrase "There is nothing in the record that indicates . . . ." Mother contends that this "allowed [father] to satisfy his burden not through affirmative evidence, but rather the absence of evidence in the record." We are not persuaded.

6

First, there is record evidence that supports a neutral finding regarding father's past participation with the children. The evidence on this point includes affidavits from mother, mother's mother, father, and father's fiancé. The affidavits mother submitted contend father was generally "inattentive and unavailable," and did not provide care for the children on the occasions when he refused to exercise his parenting time. In contrast, father's affidavits assert that he exercised parenting time whenever mother would allow it and that he "has always been a loving, caring and involved father." Mother specifically argues that father did not exercise his existing parenting time because he did not have the children overnight until "nearly 2015." This argument ignores the undisputed fact that the parties stipulated mother would remain in the family home and father could not exercise overnight parenting time until he obtained "adequate housing." The district court weighed the affidavits of both parties before finding that father "has not refused parenting time or failed to exercise parenting time since the parties divorced." "We defer to the district court's credibility determinations as to conflicting affidavits." *Knapp v. Knapp*, 883 N.W.2d 833, 837 (Minn. App. 2016). On this record, we discern no clear error in the district court's finding regarding father's past parenting.

Second, mother's general contention that eight of the district court's best-interests findings are inadequate has no support in the law or the record. A district court is not required to make express best-interests findings when modifying parenting time. *Newstrand v. Arend*, 869 N.W.2d 681, 691 (Minn. App. 2015) (stating that Minn. Stat. § 518.175, subd. 1 does not require findings on best-interests factors), *review denied* (Minn. Dec. 15, 2015). Rather, "[t]he parenting-time statute requires only that the

[district] court 'grant such parenting time . . . as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child.'" *Id.* (quoting Minn. Stat. § 518.175, subd.1(a)). Though not required to do so, the district court considered each of the statutory best-interests factors in great detail to reach the conclusion that father's proposed amended parenting-time schedule would be in the children's best interests. Mother cites no legal authority for the proposition that a best-interests finding is inadequate simply because it notes, in part, the absence of particular evidence. As a practical matter, such a rule would not make sense. For example, the lack of evidence that either parent would endanger a child should not weigh against a motion to modify parenting time on other grounds.

Because the district court applied the appropriate legal standard, and made supported findings that father's proposed modification would promote the children's best interests, we conclude that the district court did not abuse its discretion in modifying parenting time.

**Affirmed.**