## STATE EX REL. ANNA WALDRON v. LESTER BIENEK.[1]

April 27, 1923.

No. 23,435.

**Welfare of child determines its custody.**

1. In determining to whom the care and custody of a child shall be awarded, the welfare of the child is the important consideration.

**Blood relatives preferred.**

2. Preferences will be given to near blood relatives, unless such a disposition of the child will operate to its detriment.

**Grandmother given custody.**

3. Deeming it for the best interests of the child, her custody is awarded to her grandmother.

Upon the relation of Anna E. Waldron the district court for Kittson county granted its writ of habeas corpus directed to Lester Bienek for the purpose of obtaining custody of Inez Loraine Waldron. The matter was heard by Watts, J., who made findings and discharged the writ. From the order discharging the writ, relator appealed. Reversed and custody of child awarded to her grandmother.

*Charles W. Scrutchin*, for appellant.

*P. H. Konzen*, for respondent.

TAYLOR, C.

This is an appeal from an order of the district court of Kittson county discharging a writ of habeas corpus, and by consent was sub-

[1]Reported in 193 N. W. 452.

mitted upon the record made in that court.  The writ was procured
by Anna E. Waldron for the purpose of obtaining the possession and
custody of her granddaughter, Inez Loraine Waldron, a child 4 years
of age last August.  John B. Waldron, the father of Inez and son
of the relator, was a private in Company A of the 351st Infantry.
He went to France before the birth of Inez and was killed in battle.
His widow married the respondent, Lester Bienek.  She died April
1, 1921.  Before her death and on February 5, 1921, the respondent
was appointed guardian of the estate of Inez by the probate court
and duly qualified as such.  Respondent's mother lives with him
and since his wife's death has been his housekeeper and has taken
care of Inez.  Both he and his mother have become attached to the
child and desire to keep her.  He has a child of his own born a few
months before his wife's death.  This child was weak and sickly at
the time of her mother's death and he placed her with his married
sister in St. Paul that she might have the necessary medical care
and attention.  She is now in perfect health, but is still with this
sister.

Mrs. Waldron, the relator, lives with her husband and family in
the northern part of Itasca county on a farm of 160 acres which they
acquired under the homestead laws.  They have about 20 acres
under cultivation, have buildings which compare well with those of
other settlers in that locality, and have a span of horses, 4 cows and
some other stock.  The farm is worth about $2,500 and all their
property is free from encumbrance.  Her husband joins with her in
asking for the custody of their grandchild.  He works as a scaler
for a lumber company at $75 per month, which takes him away from
home the greater part of the time.  They have 4 sons living and one
daughter.  The oldest son, 23 years of age, has a homestead of his
own adjoining that of his father; another son has recently enlisted
in the army; the other two and the daughter live with their parents.

The respondent has a homestead of 160 acres in Itasca county a
few miles from the home of the Waldrons and has buildings of about
the same character as those of the Waldrons.  Respondent's mother
has a farm of 160 acres in Kittson county of which 140 acres are

under cultivation. It is worth $10,000 or more and is mortgaged for $2,750. Respondent operates this farm and he and his mother live upon it in the summer and on the homestead in the winter. He has stock and other personal property, but it is all encumbered by chattel mortgages.

Inez' father took out soldier's insurance for $10,000 in favor of his wife which inured to Inez on the death of her mother. The amounts which accrued after the death of the mother were adjusted and paid to respondent as guardian of Inez about a month before the hearing in the district court, and the payments will continue at the monthly rate of $57.50. Respondent deposited the amount which he received in a bank in his name as guardian where it still remains. Both the relator and the respondent assert that they are able and willing to provide a home for Inez and care for, maintain and educate her, and that they wish to do so. Both disclaim any intention of using or expending the money which wil come to her from her father's insurance, and express the wish that it be allowed to accumulate until she is of an age to make use of it herself.

The welfare of the child is the all-important consideration in determining to whom its care and custody shall be confided. Recognizing that those near of kin will be disposed to do more for its welfare and to advance its interests than those who lack the promptings of kinship, preference is given to near blood relatives, unless the situation disclosed indicates that it may be of advantage to the child to be placed in other hands. Here the homes offered to Inez and the ability of the parties to care for and educate her do not differ greatly. There is something of a claim that the influences growing out of the home surroundings will not be as good in the home of the relator as in that of the respondent. If there were danger that she would be subjected to vicious influences, that fact would have much weight, but we have no fear that such will be the case in either family. Respondent undoubtedly feels that in seeking to retain the custody of Inez he is fulfilling the wish of his deceased wife, for she, before her death, expressed the hope that Inez would not be given to the relator. She doubtless believed that she had cause for oppos-

ing such a disposition of her child.   But we are confronted with the duty of determining, as best we may from the evidence presented, whether it will be better for the child to be placed with her grandparents and become a member of their family or to remain with the respondent as a member of his family.   Respondent has not yet taken his own child, now 2½ years of age, into his own home, and both he and his mother will naturally take a greater interest in her than in Inez.   It is not improbable that he may marry again, and, if he should, Inez might not be given the consideration in the new household that she now receives.   Her grandparents are her nearest living relatives and naturally will take a greater interest in her and her future welfare than can be expected from those lacking the ties of kinship.   They wish to take her and raise her as their own child, and it is unlikely that any change will occur in their family relations which will tend to turn toward others the affection and good will which they have for her.   It is desirable that the disposition made of her be permanent unless unforeseen conditions shall arise making a change advisable.   Temporary and changeable arrangements do not conduce to those intimate family relations and attachments to which children are entitled.   So far as we can determine from the evidence before us, we deem it for the best interests of Inez that she be confided to the care and custody of her grandparents. Her grandmother suggests, and it may be well, that the money which shall come to her be received and preserved for her benefit by some one other than those with whom she lives, but this is a matter for the probate court to determine.

The order discharging the writ is reversed, and the care, custody and control of the child, Inez Loraine Waldron, is hereby awarded to the relator, her grandmother.