*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0635**

In the Matter of the Welfare of the Children of: D. L. W., Legal Custodian.

**Filed December 4, 2023
Affirmed
Smith, Tracy M., Judge**

Hennepin County District Court
File No. 27-JV-21-1598

Brooke Beskau Warg, Hennepin County Adult Representation Services, Minneapolis, Minnesota (for appellant-father D.L.W.)

Mary F. Moriarty, Hennepin County Attorney, Britta Nicholson, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

S.B.A., Shakopee, Minnesota (pro se respondent-mother)

David A. Yates, Minneapolis, Minnesota (for guardian ad litem)

Considered and decided by Smith, Tracy M., Presiding Judge; Gaïtas, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

On appeal from the district court's order for involuntary transfer of permanent legal and physical custody of appellant-father D.L.W.'s children to a relative, father argues that the district court (1) failed to make adequate findings of fact regarding the credibility of certain witnesses, (2) should not have relied on father's failure to complete family therapy

in transferring permanent custody of the children, and (3) failed to make adequate findings of fact specific to each child's best interests and should not have found that the transfer was in the best interests of the children. We affirm.

**FACTS**

Father has four children—D.D.W., born in 2005; T.D.W., born in 2007; V.D.W., born in 2010; and D.A.A.-W., born in 2015. In a family court proceeding, father was granted joint legal and temporary sole physical custody of V.D.W. and D.A.A.-W. In May 2021, respondent Hennepin County Human Services and Public Health Department received a report alleging that father had sexually abused T.D.W. The department removed V.D.W. and D.A.A.-W. from father's home and placed them in relative foster care.

Shortly thereafter, the department filed a petition alleging that father's four children were in need of protection or services (CHIPS). The district court held an emergency protective-care hearing and ordered that V.D.W. and D.A.A.-W. remain in foster care with their maternal grandfather. Father entered a denial to the CHIPS petition.

In July 2021, the department filed an expedited termination-of-parental-rights (TPR) petition to terminate father's parental rights to his four children. The district court found that the TPR petition stated a prima facie case for termination and dismissed the CHIPS petition.

In January 2023, the department filed a petition to transfer permanent legal and physical custody of V.D.W. and D.A.A.-W. to grandfather. The department then amended

2

the TPR petition to remove V.D.W. and D.A.A.-W.[1] Following a five-day permanency trial in January and February 2023, the district court granted the transfer petition and ordered that legal and physical custody of V.D.W. and D.A.A.-W. be permanently transferred to grandfather pending the approval of grandfather's application for Northstar kinship assistance.[2] Father moved for a new trial or amended findings. The district court denied the motion. The district court amended its order transferring permanent custody after grandfather's Northstar kinship assistance application was approved.

Father appeals.

## DECISION

A district court "may order permanent legal and physical custody to a fit and willing relative in the best interests of the child . . . after the court has reviewed the suitability of the prospective legal and physical custodian." Minn. Stat. § 260C.515, subd. 4 (2022). Under Minnesota Statutes section 260C.517(a) (2022), the district court's order transferring permanent custody of the child must include "detailed findings" on four factors:

> (1) how the child's best interests are served by the order;
> (2) the nature and extent of the responsible social services

---

[1] The department also removed D.D.W. from the TPR petition after it filed a petition to transfer permanent custody of D.D.W. to the department and father agreed to the transfer. Father voluntarily terminated his parental rights to T.D.W. The custody orders for D.D.W. and T.D.W. are not at issue on appeal.

[2] Northstar kinship assistance is a state benefits program available to children placed in relative foster care who find permanency with the relative through a transfer of permanent legal and physical custody. *See* Minn. Stat. § 256N.02, subd. 11 (2022) (defining Northstar kinship assistance); *see also* Minn. Stat. § 256N.22 (2022) (addressing Northstar kinship assistance eligibility).

agency's reasonable efforts . . . to reunify the child with the parent or guardian . . . ; (3) the parent's or parents' efforts and ability to use services to correct the conditions which led to the out-of-home placement; and (4) that the conditions which led to the out-of-home placement have not been corrected so that the child can safely return home.

All four statutory factors must be proved by clear and convincing evidence. Minn. R. Juv. Prot. P. 58.03, subd. 1; *In re Welfare of Child. of J.C.L.*, 958 N.W.2d 653, 656 (Minn. App. 2021), *rev. denied* (Minn. May 12, 2021).

In reviewing an order transferring permanent custody, appellate courts review factual findings for clear error and the finding of a statutory basis for the order for an abuse of discretion. *In re Welfare of Child of D.L.D.*, 865 N.W.2d 315, 321 (Minn. App. 2015), *rev. denied* (Minn. July 21, 2015). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted). When reviewing factual findings for clear error, appellate courts (1) view the evidence in the light most favorable to the findings, (2) do not find their own facts, (3) do not reweigh the evidence, and (4) do not reconcile conflicting evidence. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021).

Father makes three arguments challenging the district court's order. First, he contends that the district court's findings are insufficient to permit appellate review because the district court failed to make credibility determinations as to all trial witnesses. Second, he asserts that the district court clearly erred and abused its discretion by relying on father's failure to complete family therapy when ruling on the third and fourth statutory

factors regarding correction of the conditions that led to the children's out-of-home placement. *See* Minn. Stat. § 260C.517(a)(3), (4). Third, father argues that the district court abused its discretion by not making individualized best-interests findings for each child and by finding that transfer of custody was in the children's best interests under the first statutory factor. *See id.* (a)(1).[3] We address each argument in turn.

## I.     The district court made findings sufficient to permit appellate review.

Father argues that the district court's findings of fact are insufficient to permit appellate review "because the district court failed to make credibility determinations for all witnesses." A district court's findings are deficient when they "merely recite[] or summarize[]" testimony without commenting independently on the opinions of the witnesses, the foundation for their opinions, or the relative credibility of the witnesses. *In re Welfare of M.M.*, 452 N.W.2d 236, 239 (Minn. 1990); *see In re Civ. Commitment of Spicer*, 853 N.W.2d 803, 810 (Minn. App. 2014) (quoting *M.M.*).

---

[3] As a preliminary matter, the department argues that the first and third arguments—about the absence of credibility findings and the district court's best-interests determinations—are forfeited because they were not preserved for appeal. We appreciate father's candor in conceding that he did not raise these issues in the district court. Generally, a party cannot raise a new issue on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). But this rule is not "ironclad." *Putz v. Putz*, 645 N.W.2d 343, 350 (Minn. 2002). Appellate courts may address issues as justice requires. Minn. R. Civ. App. P. 103.04. Even constitutional issues raised for the first time on appeal may be addressed when required in the interest of justice, when the parties have had adequate briefing time, and when the issues were implied in the lower court. *Tischendorf v. Tischendorf*, 321 N.W.2d 405, 410 (Minn. 1982). Here, as father argues, the issues involve father's "weighty interest" in an ongoing relationship with his children. The issues were implied in the district court because they relate to the statutory criteria for a transfer of permanent legal and physical custody. In addition, the parties had adequate briefing time, and the department fully briefed the issues. We therefore choose to address father's arguments.

Eight witnesses testified at the permanency trial—father, respondent mother of father's four children, grandfather, the child-protection investigator, the social worker, the guardian ad litem, D.D.W., and V.D.W. The parties agree, and the record demonstrates, that the district court did not make explicit findings regarding the credibility of three witnesses—grandfather, D.D.W., and V.D.W. Father argues that the district court's findings are deficient because the court "merely recited or summarized" the testimony of these witnesses without making findings of fact regarding their credibility. He contends that the absence of credibility determinations regarding these three witnesses matters because the witnesses "offered testimony on key issues such as the proposed custodian's suitability and how the order would serve the children's best interests." *See* Minn. Stat. §§ 260C.515, subd. 4(1) (requiring consideration of prospective custodian's suitability), .517(a)(1) (requiring detailed findings on child's best interests).

We conclude that the district court's findings are sufficient to facilitate effective appellate review on both statutory criteria even though the district court did not explicitly comment on the credibility of these three witnesses. Father suggests that *M.M.* required the district court here to make explicit findings of fact regarding the credibility of all the witnesses. In *M.M.*, after a child's parents' parental rights were terminated, a relative sought legal and physical custody of the child. 452 N.W.2d at 237. Following a hearing, the district court denied the relative's motion. *Id.* at 238. The district court had heard testimony from ten witnesses, but its findings of fact consisted primarily of a summary of the testimony of the prevailing party's witnesses. *Id.* at 238-39. The court "made no specific findings" and provided no basis for its conclusions of law. *Id.* at 239. The supreme court

6

held that the findings were deficient because they were "inadequate to facilitate effective appellate review, to provide insight into which facts or opinions were most persuasive of the ultimate decision, or to demonstrate the trial court's comprehensive consideration of the statutory criteria." *Id.* But the supreme court did not suggest that factual findings are adequate only if a credibility determination is made for every witness. And, here, unlike in *M.M.*, the district court made specific findings that demonstrate its comprehensive consideration of the statutory criteria and explain the bases for its decisions.

First, the district court made adequate findings regarding its consideration of grandfather's suitability. The district court found that grandfather "is a suitable prospective legal and physical custodian for the children." Citing the child-protection investigation that was completed by the department, the district court found that (1) grandfather "has an approved background study . . . and is licensed for foster care"; (2) "[t]here is a Kinship Placement Agreement" between the department and grandfather; (3) grandfather "is mentally and physically able to provide for the needs of the children"; (4) grandfather "has the capacity and disposition to give the children the love, affection and guidance required by the children and to continue their education and raise the children in their culture, religion, or creed"; and (5) grandfather "has cooperated with [the department] in providing for the needs of the children." The absence of explicit credibility findings regarding the

testimony of grandfather and two of father's children does not impede effective appellate review of the district court's determination regarding grandfather's suitability.[4]

Second, the district court made adequate findings of fact regarding the best interests of the children. Citing witness testimony—including the testimony of grandfather and V.D.W.—and two psychosexual evaluations of father, the district court found:

> The children currently reside with [grandfather], the proposed custodian and maternal grandfather, and their other sibling. [Grandfather] has parented the children appropriately since 2019, addressing their physical needs and ensuring their mental health needs are addressed by taking them to their therapy appointments. . . . [Grandfather] has indicated he would continue to foster the relationships between the children and their other siblings and also with extended family. . . . Moreover, the children have a closely bonded relationship with [T.D.W.] whom they currently live with. Based upon the testimony received from [father], it is almost certain this relationship will be severed if the children are removed from [grandfather's] care and placed with [father]. . . . [Father] has demonstrated impulsivity, recklessness, and retaliatory intent. . . . Specifically, [father] expressed a desire to retaliate against those he believes have wronged him stating if he lost his children "someone would pay." . . . During the child protection investigation, [father] stated he would kill himself and the children. . . . Additionally, without appropriate family and individual therapy, the risk of [V.D.W. and D.A.A.-W] being exposed to sexually abusive situations remain. . . . The Court finds those behaviors pose a significant risk to the children and the relationships they have with their family members.

These findings are adequate to review the district court's determination regarding the best interests of the children.

---

[4] We note that, unlike section 260C.517(a), which addresses the best interests of the child, the text of section 260C.515, subdivision 4(1), which addresses the suitability of the prospective custodian, does not require detailed findings.

**II.  The district court did not abuse its discretion by relying on father's failure to complete family therapy in transferring permanent custody of the children.**

Father next argues that the district court abused its discretion by relying on father's failure to complete family therapy for its findings regarding father's efforts to correct the conditions that led to the children's out-of-home placement and regarding whether the conditions had been corrected. *See* Minn. Stat. § 260C.517(a)(3), (4).

When the children were removed from the home, the department offered father a voluntary case plan that included (1) completing a psychosexual evaluation and following all recommendations and (2) completing a parenting assessment and following all recommendations. Father completed a psychosexual evaluation and a parenting assessment, both of which recommended that father participate in family therapy. Father concedes that he did not participate in family therapy. But father argues that "the district court's finding that [f]ather was unwilling to participate in family therapy is clearly erroneous" and that the district court therefore "abused its discretion when it relied on [f]ather's failure to complete therapy when considering [f]ather's efforts to the conditions and whether the conditions were actually corrected."

Father's argument mischaracterizes the district court's finding. The district court found only that father was "reluctan[t] to pursue . . . family therapy." Even so, father contends that the only reason he did not participate in family therapy was "because the family was placed on a waiting list for that service." During the social worker's direct examination, the social worker testified that father and the children were placed on a waiting list for family therapy. The social worker also testified that the referral for family

9

therapy was delayed because of father's lack of communication with the department and his reluctance to follow through with services. On cross-examination, the social worker testified that father claimed that insurance issues prevented him from participating in family therapy. The social worker explained, however, that insurance was not a barrier to receiving family therapy. The record supports the district court's finding that father was reluctant to pursue family therapy.

Because the record supports the district court's finding regarding father's failure to complete family therapy, the district court did not clearly err or abuse its discretion by relying on father's failure to complete family therapy in transferring permanent custody of the children.

**III.    The district court did not abuse its discretion by determining that the transfer of custody was in the best interests of the children.**

Finally, father challenges the district court's determination that a transfer of permanent legal and physical custody was in the best interests of the children. *See* Minn. Stat. § 260C.517(a)(1).

"The paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child." Minn. Stat. § 260C.001, subd. 2(a) (2022). Minnesota Statutes section 260C.511 (2022) "provides the best-interests criteria that a district court must consider before ordering a transfer of permanent legal and physical custody of a child to a relative." *J.C.L.*, 958 N.W.2d at 656.[5] In a permanency proceeding,

---

[5] Although the *J.C.L.* decision discussed the 2020 version of the statute, we cite the current 2022 version because the language of the statute has not been changed.

"'best interests of the child' means all relevant factors to be considered and evaluated." Minn. Stat. § 260C.511(a); *see* Minn. R. Juv. Prot. P. 58.04(b) (addressing need for findings on child's best interests in permanency matter). The district court "must be governed by the best interests of the child, including a review of the relationship between the child and relatives and the child and other important persons with whom the child has resided or had significant contact." Minn. Stat. § 260C.511(b). Father argues both that the district court failed to make individualized best-interests findings and that the district court abused its discretion by determining that a transfer of permanent legal and physical custody was in the best interests of the children.

## A.  Individualized Findings

Father first argues that the district court erred by failing to make individualized best-interests findings regarding each child. Father relies on our nonprecedential decision in *In re Welfare of J.B.O.* in which we concluded "that the district court's best-interests analysis failed to differentiate between the individual interests of each child." No. A19-1052, 2019 WL 7287100, at *5 (Minn. App. Dec. 30, 2019). Father contends that, here, "the district court's best interest findings do not adequately consider the individual needs of the children" because "the district court's findings only refer to the 'children' rather than to each child individually."

Nonprecedential opinions are not binding authority. Minn. R. Civ. App. P. 136.01, subd. 1(c). Nevertheless, we do not disagree that a district court must consider the individual needs of each child in its best-interests analysis. But father does not identify any individual needs specific to V.D.W. or D.A.A.-W. that the district court failed to consider.

11

Father contends that the district court failed to consider V.D.W.'s stated preference to live with father. As further discussed in subsection B below, the district court adequately considered V.D.W.'s custodial preference. Father also cites testimony describing V.D.W. and D.A.A.-W. as "[v]ery different" and "polar opposite[s]." The record, however, demonstrates that V.D.W. and D.A.A.-W. share the same relationships with relatives and same need for therapy and a safe home. The fact that the district court referred to V.D.W. and D.A.A.-W. as the "children" in its findings does not mean that the district court did not individually consider each child's interest in having a safe and stable home and getting their needs met.

## B.    Best Interests of the Children

Next, father contends that the district court abused its discretion by determining that the transfer of custody was in the best interests of the children. He makes two arguments.

First, father argues that the district court erred by failing to take V.D.W.'s wishes into account in its best-interests analysis. Father notes that V.D.W. testified that she thinks father is a "good dad" and that she trusts him. Father further notes that V.D.W. expressed a preference to live with father because she "feel[s] like [her] dad could take . . . better care" of her and D.A.A.-W. "because [her] grandpa's getting a little old, and . . . he can't do some of the stuff [her] dad can." As the department observes, however, there is no requirement under section 260C.511 that the district court address the child's wishes in its best-interests analysis—indeed, there cannot be such a requirement since not all children have preferences or are even old enough to have preferences. And the district court did recognize V.D.W.'s preference: it acknowledged her testimony in its order. But the district

court still determined that returning V.D.W. to father's care was contrary to her best interests.

Second, father argues that the district court erred by failing to consider the impact that transferring permanent legal and physical custody to grandfather would have on the relationship between the children and their father. Father mentions that in June 2021 grandfather informed the social worker that he does not "get along well" with father. During grandfather's direct examination, he testified as follows:

> Q: Do you understand that when you accept a transfer of legal and physical custody of these two children that both [mother] and [father] retain the right to have contact with the children?
> A: Yes.
> Q: Are you willing to be responsible for making decisions for the children that are in their best interest with respect to their contact with both of their parents?
> A: Yes.
> Q: And do you understand that . . . the Department will no longer be involved in the care and planning for the children and that will be solely your decision?
> A: Yes.
> Q: You will have to evaluate whether or not contact at certain points and time is safe and appropriate for the children as well as whether or not the amount of contact they have is safe and appropriate.
> A: Yes.
> Q: Do you feel you are capable of doing so?
> A: I do.

Father acknowledges this testimony but contends that "the evidence shows the transfer of custody is not in the children's best interests because [grandfather] is unlikely to continue visitation between the children and . . . [f]ather." But an appellate court may not make factual findings when reviewing for clear error. *See Kenney*, 963 N.W.2d at 221-22. On

this record, the district court adequately considered V.D.W. and D.A.A.-W.'s relationship with father.

In conclusion, the district court did not abuse its discretion by determining that transferring permanent legal and physical custody was in the best interests of the children.

**Affirmed.**