*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1175**

In the Matter of the Welfare of the Children of:
A. S., D. S., C. P., J. H., Parents.

**Filed February 26, 2024
Reversed and remanded
Cochran, Judge**

Faribault County District Court
File No. 22-JV-22-16

Kelli M. Thiel, Minneapolis, Minnesota (for appellant A.S.)

Cameron Davis, Faribault County Attorney, Blue Earth, Minnesota (for respondent Human Services of Faribault & Martin Counties)

Kris Kuechenmeister, Blue Earth, Minnesota (guardian ad litem)

Considered and decided by Johnson, Presiding Judge; Segal, Chief Judge; and Cochran, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

Appellant-mother challenges the district court's order transferring permanent legal and physical custody of two of her children to the children's aunt, arguing that the district court failed to make individualized findings related to aunt's suitability as a custodian and failed to effectuate her right to counsel. Because we conclude that the district court's factual findings are inadequate to facilitate appellate review, we reverse and remand.

## FACTS

Prior to June 2021, appellant A.S. (mother) had sole legal and sole physical custody of her three children, R.S., Z.S., and H.H. On June 18, 2021, following an emergency-protective-care hearing, all three children were placed in the custody of respondent Human Services of Faribault and Martin Counties (the agency) and placed out of home. Mother entered an admission that all three children were in need of protection and services at an admit/deny hearing, and the district court adjudicated the three children accordingly. Mother appeared and was represented by court-appointed counsel at both hearings. R.S. and Z.S. (the children) were ultimately placed with their maternal grandmother, D.S. (grandmother), and H.H. was placed with his father, J.H. The agency provided mother with a case plan following adjudication.

*Petition to Transfer Physical and Legal Custody to Grandmother*

In February 2022, the agency filed a petition to transfer permanent physical and legal custody of the children to grandmother based on mother's failure to make meaningful progress on her case plan. The petition also requested to transfer custody of H.H. to his father. The matter proceeded to trial on May 11, 2022.

Mother did not appear at the trial, but her counsel appeared and communicated that mother was "okay with the transfer of custody petition." During the trial, the agency presented testimony from grandmother, J.H., Z.S.'s father, the agency case manager, and the guardian ad litem.

2

Following the trial, the district court issued an order transferring permanent legal and physical custody of H.H. to his father[1] and transferring permanent legal and physical custody of the children to grandmother. The district court, however, stayed the transfer to grandmother pending approval of Northstar kinship assistance.[2] The district court determined that transferring custody to grandmother was in the best interests of the children. The district court also made specific findings supporting its best-interests determination, including that the children have a "strong, bonded relationship with [grandmother]," and that grandmother has a strong support network, which includes mother's adult daughter, grandmother's other adult daughter, and J.H. The district court also found that, "[i]n addition to providing foster care to [the children], [grandmother] provides daily after-school care for [H.H.]" and grandmother and J.H. "have a strong working relationship." And the district court found that mother, "despite being unable to provide care for the children, remains an important part of the children's lives and an integrated part of the extended family unit."

*Review Hearings*

During the October 5 review hearing, before the district court issued a final order transferring permanent legal and physical custody to grandmother, the agency informed the district court that grandmother had experienced some health issues. As a result, the

---

[1] The transfer of custody of H.H. to J.H. is not at issue in this appeal.
[2] Northstar kinship assistance is a state benefits program available to a child placed in relative foster care who finds permanency with the relative through a transfer of permanent legal and physical custody. *See* Minn. Stat. § 256N.02, subd. 11 (2022) (defining Northstar kinship assistance); *see also* Minn. Stat. § 256N.22 (2022) (addressing Northstar kinship assistance eligibility).

agency initiated a change in placement from grandmother to an aunt, who resides in Iowa. According to the agency, the children moved to aunt's residence in August 2022. Because of grandmother's health issues, the agency indicated that it was making efforts to permanently place the children with aunt. The agency asserted that placement with aunt was in the children's best interests. Neither mother nor her counsel appeared at this hearing. On October 27, the district court issued an order approving temporary placement with aunt.

The district court held another review hearing on January 4, 2023. Mother appeared at the hearing with her adult daughter and J.H., but without counsel. During the hearing, the agency noted that grandmother's health had further declined. As a result, the agency intended to permanently place the children with aunt and informed the district court that it would be filing a motion for an order transferring custody to aunt. Mother, her adult daughter, and J.H. each voiced concerns about aunt not bringing the children to Minnesota for visits and difficulties communicating with aunt, which had the effect of limiting contact between the children and their siblings.

In response to the concerns, the agency noted that it considers sibling contact in making a placement. The agency again indicated that it would be filing a motion to transfer custody for the district court to consider "the appropriate path forward." The agency suggested that, when the motion is filed, mother and J.H. consider consulting with counsel or "review[] their legal options." The district court and the agency then discussed the status of counsel:

4

> DISTRICT COURT: I think [mother and J.H.] discharged their counsel once we got past permanency in their case—in this case.
>
> AGENCY: We did absolutely. I mean at this point, we are in—we would be in the realm of, you know, family law issues—issues with visitation, sibling visitation, of course. The court, the agency, and [the guardian ad litem] maintain an interest in that as long as the CHIPS case is active.
>
> But you know, [mother's] parental rights are not terminated; she retains parental rights and has the ability to petition the court for any specific relief or to be heard—hearing any motion. So you know, that's I suppose another thing the court should consider is whether it would be appropriate to reappoint counsel for [mother] at the time that motion is filed.

The court informed mother and J.H. that they had the "option of going and retaining [their] own counsel if [they] are able to do so" and that it would "look at the rules and see if we can appoint counsel once that motion has been filed for [mother]." The district court also directed the agency to investigate the concerns expressed at the hearing regarding aunt and to report back.

Although the transcript from the January review hearing reflects that the court was under the impression that counsel for mother had been discharged after the court transferred permanent custody to grandmother, there is no evidence in the appellate record that mother's counsel was formally discharged. In fact, the register of actions reflects that mother's counsel continued to receive e-service of documents filed in district court until August 14, 2023.

5

*Motion to Transfer Custody to Aunt*

On January 27, 2023, the agency filed a motion to transfer permanent legal and physical custody of the children to aunt, to be heard at the February 15 post-permanency review hearing. On February 13, the agency filed an update regarding the communication issues with aunt. The agency explained that it met with mother's adult daughter, aunt, and J.H. separately to address "the current communication issues and sibling visits" and that "[a]ll parties agreed that they could work together moving forward." The report does not reflect that the agency met with mother.

At the February 15 hearing, aunt appeared but neither mother nor her counsel appeared. The district court heard updates from the agency about the investigation into the communication issues, the guardian ad litem, and the agency case manager. Aunt did not testify, and the agency did not introduce any exhibits. At the conclusion of the hearing, the agency stated, "[E]ssentially, all [the agency is] really asking is that [it] be allowed to substitute [aunt's] name for [grandmother's] name in that previous order, with the additional finding that [aunt] is a safe and appropriate caretaker for the children."

Following the hearing, the agency filed a proposed order. The district court granted the agency's motion and stayed the order pending Northstar kinship assistance. On July 18, 2023, the district court issued an order transferring permanent legal and physical custody of the children to aunt.

Mother appeals.[3]

**DECISION**

Mother challenges the order transferring permanent physical and legal custody of the children to aunt. When reviewing an order transferring permanent custody, we review factual findings for clear error and the finding of a statutory basis for the order for an abuse of discretion. *In re Welfare of Child of D.L.D.*, 865 N.W.2d 315, 321 (Minn. App. 2015), *rev. denied* (Minn. July 21, 2015). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted). When reviewing factual findings for clear error, appellate courts view the evidence in the light most favorable to the findings, do not find their own facts, do not reweigh the evidence, and do not reconcile conflicting evidence. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021).

Mother argues that the district court abused its discretion by transferring permanent physical and legal custody to aunt because the district court's factual findings were inadequate and the district court failed to effectuate her right to counsel. We address each issue in turn.

---

[3] On August 8, 2023, a different attorney filed a certificate of representation for mother in district court. That attorney represents mother in this appeal. It is unclear from the record on appeal whether the new attorney was appointed by the district court.

**I.** **The district court did not make findings sufficient to sustain the transfer of permanent custody to aunt.**

Mother argues that the district court erred by finding that placement with aunt was in the children's best interests because the district court's factual findings were not particularized to aunt and failed to address the statutory criteria about aunt's suitability as custodian.

A district court "may order permanent legal and physical custody to a fit and willing relative in the best interests of the child" after "the court has reviewed the suitability of the prospective legal and physical custodian." Minn. Stat. § 260C.515, subd. 4 (2022). Such an order must include "detailed findings" about "how the child's best interests are served by the order." Minn. Stat. § 260C.517 (2022). If the transfer of custody is to a relative who is not a parent, the district court must make findings that the transfer is: (1) in the child's best interests; (2) that adoption is not in the child's best interests; (3) that the agency discussed adoption with the child's parent or parents, or, if the agency did not make efforts, why efforts were not made; and (4) that there are reasons to separate siblings. Minn. Stat. § 260C.515, subd. 4(7)(i)-(iv). The applicable standard of proof is clear and convincing evidence. Minn. R. Juv. Prot. P. 58.03, subd. 1; *In re Welfare of Child. of J.C.L.*, 958 N.W.2d 653, 656 (Minn. App. 2021), *rev. denied* (Minn. May 12, 2021).

Here, mother challenges two of the four statutory findings required under section 260C.515, subdivision 4(7), for a transfer to a relative who is not a parent—the children's best interests under subdivision 4(7)(i), and the discussion of adoption under subdivision 4(7)(iii). We consider each in turn.

8

*Best-Interests Finding Under Section 260C.515, Subdivision 4(7)(i)*

Mother first argues that the district court failed to make the statutorily required particularized best-interests findings related to aunt's suitability as permanent legal and physical custodian of the children, contending that the district court's findings are clearly erroneous because they are based on evidence about grandmother, not aunt. In a permanency proceeding, the best interests of a child "means all relevant factors to be considered" and includes "a review of the relationship between the child and relatives and the child and other important persons with whom the child has resided or had significant contact." Minn. Stat. § 260C.511 (2022); *see also J.C.L.*, 958 N.W.2d at 657. We conclude that the district court's factual findings are insufficient to permit appellate review of its best-interests analysis.

A district court's order must contain sufficient factual findings to ensure that it considered the relevant statutory factors, facilitate appellate review, and satisfy the parties that the district court carefully and fairly considered the issues. *Rosenfeld v. Rosenfeld*, 249 N.W.2d 168, 171 (Minn. 1976); *see In re Welfare of Child of J.R.R.*, 943 N.W.2d 661, 669-70 (Minn. App. 2020) (citing this aspect of *Rosenfeld* in a juvenile-protection appeal); *cf. In re Welfare of M.M.*, 452 N.W.2d 236, 239 (Minn. 1990) (concluding that district court's findings of fact were deficient when the findings were "inadequate to facilitate effective appellate review, to provide insight into which facts or opinions were most persuasive of the ultimate decision, or to demonstrate the [district] court's comprehensive consideration of the statutory criteria"). "Even though the [district] court is given broad discretion in determining custody matters, it is important that the basis for the court's

9

decision be set forth with a high degree of particularity." *Durkin v. Hinich*, 442 N.W.2d 148, 151 (Minn. 1989) (quotation omitted); *see In re Child of Evenson*, 729 N.W.2d 632, 635 (Minn. App. 2007) (citing this aspect of *Durkin* in a juvenile-protection appeal), *rev. denied* (Minn. June 19, 2007).

Here, the district court's order fails to provide sufficient factual findings to allow for meaningful appellate review. The district court's order includes conclusory findings that aunt "is capable of maintaining sibling and family relationships" and that "[t]he children will be able to maintain a relationship with the relatives."[4] The order, however, is silent about both the communication issues that mother and other family members raised during the January 2023 hearing, which allegedly impaired the children's relationship with their siblings and other family members, and the results of the agency's investigation into those issues. Moreover, the findings do not contain particularized information about the children, the relatives with whom the children have relationships, or how placement with aunt will serve those relationships. Absent such findings, we are unable to discern whether the district court adequately considered the children's relationships as required under Minnesota Statutes section 260C.511(b). *Cf. J.C.L.*, 958 N.W.2d at 658 (concluding that the district court properly considered the factors under section 260C.511 when the district court "found that the step-grandfather has facilitated the children's relationships with their mother and father, as well as members of the children's extended family, including both

---

[4] By contrast, the district court's factual findings in the order transferring custody to grandmother identified specific facts about grandmother's support network, grandmother's care of the children and their half-sibling, the children's amount of interaction with their half-sibling while in grandmother's care, and the children's relationship with mother.

10

maternal and paternal grandparents, aunts, uncles, and half-siblings"). Consequently, we cannot determine whether the district court abused its discretion when it concluded that transfer of permanent legal and physical custody of the children to aunt is in the best interests of the children.

Our conclusion that the order is insufficient to permit meaningful appellate review of mother's challenges to the factual findings is reinforced by the record in this case. The district court's order was issued following a hearing that lasted only 17 minutes, at which the agency and guardian ad litem each provided a brief update. But the agency did not introduce any exhibits, and aunt did not testify. The district court's order transferring custody of the children to aunt, which was drafted by the agency, states:

> Based upon the reports filed with the Court and information provided by the Guardian ad Litem, and in light of the uncontested motion by the County to substitute [aunt] as proposed custodian for the children, the Court finds that it is in the best interest of the children to transfer custody of the children to [aunt]. All other findings from this Court's prior transfer order, issued on June 10, 2022, are incorporated herein.

Although the order contains additional factual findings, including that "[t]he children have a significant relationship with the proposed permanent custodian" and "[t]he proposed permanent custodian has been the children's primary caretaker(s) since August 24, 2022, and this home has provided a stable and satisfactory environment," it is not clear what information the district court relied upon when making its findings. Even if a parent fails to appear, the district court must make "detailed findings" about how the children's best interests will be served by the order and those findings must be based on clear and

11

convincing evidence. *See* Minn. Stat. § 260C.517; Minn. R. Juv. Prot. P. 18.02, 58.03, subd. 1. Because the district court's best-interests findings do not give "insight into which facts or opinions were most persuasive of the ultimate decision" or "demonstrate the [district] court's comprehensive consideration of the statutory criteria," we conclude the findings are insufficient for appellate review. *See M.M.*, 452 N.W.2d at 239.[5]

*Adoption Finding Under Section 260C.515, Subdivision 4(7)(iii)*

Mother also argues that the district court erred in its finding that "the agency made efforts to discuss adoption with the child's parent or parents, or the agency did not make efforts to discuss adoption and the reasons why efforts were not made," as required under section 260C.515, subdivision 4(7)(iii). We agree.

The district court found that "[t]he agency made efforts to discuss adoption with mother." As mother argues, there is no evidence that the agency discussed adoption with

---

[5] To the extent that mother argues that the district court erred by not making findings addressing the statutory criteria under Minnesota Statutes section 260C.212, subdivision 2(b) (2022), we disagree. As this court recently explained:

> The factors in section 260C.212, subdivision 2(b), are aligned with the best interests of a child in a permanency proceeding, but those factors are not required by section 260C.511, which governs and specifies the best-interests criteria that must be considered before ordering a permanency disposition other than a termination of parental rights.

*J.C.L.*, 958 N.W.2d at 657. Thus, although the legislature has emphasized that the best interests of children who experience the transfer of permanent legal and physical custody are met by "requiring individualized determinations under section 260C.212, subdivision 2, paragraph (b), of the needs of the child and how the selected home will serve the needs of the child," Minn. Stat. § 260C.193, subd. 3(a)(2) (2022), a district court is not required to make individualized findings related to each of the factors listed in section 260C.212, subdivision 2(b).

mother in relation to the transfer of custody to aunt. To the contrary, the record reflects that the agency requested that the district court "incorporate its transfer findings from the previous transfer order with respect to the decision to transfer custody versus adoption." Because the district court's finding was not based on efforts related to the aunt as the proposed custodian, we conclude that the district court's finding that the agency "made efforts to discuss adoption with Mother" is not supported by the record and does not satisfy section 260C.515, subdivision 4(7)(iii).

In sum, we conclude that the district court's findings related to section 260C.515, subdivision 4(7)(i), are insufficient for appellate review and that the district court failed to make the finding required under section 260C.515, subdivision 4(7)(iii). As a result, we conclude the district court's findings cannot sustain the transfer of physical and legal custody to aunt.

## II. The record is insufficient to determine whether the district court erred with respect to mother's right to counsel.

Mother also argues that the district court "improperly dismissed" her counsel while permanency proceedings were still ongoing.

Minnesota Rule of Juvenile Protection Procedure 36.01 provides "[e]very party and participant has the right to be represented by counsel in every juvenile protection matter, including through appeal, if any." Under Minnesota Rule of Juvenile Protection Procedure 36.05, an attorney "shall continue representation until": (a) "all district court proceedings in the matter have been completed"; (b) "the attorney has been discharged by the client in writing or on the record"; (c) "the court grants the attorney's motion for

13

withdrawal"; or (d) "the court approves the attorney's written substitution of counsel." Appointment of counsel for parent is pursuant to Minnesota Statutes section 260C.163, subdivision 3 (2022). Minn. R. Juv. Prot. P. 36.02, subd. 2. If the parent desires counsel and is eligible for counsel, the court must appoint counsel to represent the parent "prior to the first hearing on the petition and at all stages of the proceedings." Minn. Stat. § 260C.163, subd. 3(c).

Here, it is undisputed that the district court appointed counsel for mother and that her counsel appeared during the May 2022 trial regarding the transfer to grandmother. Mother then appeared, without counsel, at the January 2023 review hearing. During that hearing, both the district court and the agency stated that mother's counsel had been discharged. The district court's and the agency's comments at the hearing suggest that they believed that the permanency proceedings had concluded and mother was no longer entitled to counsel. Neither mother nor her counsel appeared at the February 2023 hearing regarding the motion to transfer custody to aunt, and the district court did not address the issue of mother's counsel at that hearing. But the register of actions reflects that mother's court-appointed counsel continued to receive e-service until August 14, 2023.

On this record, we cannot discern whether the district court complied with its obligations with respect to mother's counsel while the permanency proceedings were still ongoing. The record does not contain evidence—outside of the district court's and the agency's comments—that mother's counsel was discharged or withdrew from representation. The record therefore does not support that the district court dismissed mother's counsel, improperly or otherwise. But our conclusion that mother has not shown

that the district court dismissed her counsel does not address the crux of her argument: that mother was denied effective assistance of counsel during the permanency proceedings relating to the transfer of custody to aunt, in part due to the actions of the district court. Ultimately, however, we need not address whether the district court erred with respect to mother's counsel in light of our conclusion above that we must reverse the district court's order and remand to the district court because the district court did not make sufficient factual findings.

In sum, we reverse and remand for the district court to make further findings related to the statutory criteria. On remand, the district court shall consider whether mother is a party entitled to counsel under the Minnesota Rules of Juvenile Protection Procedure and, if so, whether mother is entitled to court-appointed counsel pursuant to Minnesota Rule of Juvenile Protection Procedure 36.01, subdivision 2. *See also* Minn. Stat. § 260C.163, subd. 3. We note that the Minnesota Rules of Juvenile Protection Procedure were amended effective January 1, 2024, and that the amended rules govern this case on remand. The district court may, in its discretion, reopen the record to address mother's entitlement to counsel and the required statutory findings.

**Reversed and remanded.**